[Civ. No. 753. Fourth Appellate District.—June 7, 1932.]

MAURICE JOHN BENNETT, a Minor, et al., Respondents,
v. KINGS COUNTY, Appellant.

148

Clarence H. Wilson, District Attorney, for Appellant.

Paul D. Morse, Jesse E. Nichols and John F. Pryor for Respondents.

BARNARD, P. J.—This action was brought by the heirs of William J. Bennett to recover for his death, alleged to have been caused by the unsafe, dangerous and defective condition of a bridge and the approaches thereto. The answer, in addition to a denial of the dangerous and defective condition of the bridge and road, alleged as a separate defense that the accident occurred solely by reason of the negligent manner in which the deceased had driven his automobile. There were no eye-witnesses to the accident and the evidence is without conflict as to the essential facts.

The accident occurred in Kings County at a point where a public highway crosses a body of water known as Green slough. Across this slough was a bridge about eighteen feet wide and twenty-eight feet long, being approximately on a level with the road. The center line of this bridge is approximately at right angles to the direction of the slough, but this center line makes an angle of about thirty-five degrees with the center line of the traveled portion of the road. In other words, the situation was such that a person traveling down the center of the road would run into the slough unless he made a sharp turn to enter the bridge. There were no guard-rails either upon the bridge or its approaches and there were no signs warning travelers that they were approaching a bridge. The road itself was an oiled road, the oiled portion thereof being fifteen feet wide, but narrowing to about ten or twelve feet where it crossed the bridge. The bridge had been in that position, and in a similar condition, for more than twenty years.

About 6 o'clock on the morning of December 8, 1930, Bennett left the home of a relative about a mile and three-quarters from the bridge in a light touring car without side curtains, and proceeded in the direction of the bridge. His car had stood out all night and his windshield was frosted and ice had formed thereon. It was dark and there was a dense fog, another witness testifying that he could see about thirty feet at the time. When he left the home of his relative, Bennett was looking out on the left-

hand side of his windshield and the lights on his car were burning. A short time later Bennett was found dead in his machine, which was upside down in the slough, the whole body of the car being under water, with its front lights still burning. The tracks of the machine were visible and showed that it had come along the center of the road and that instead of making the sharp turn on to the bridge, it had gone straight ahead into the slough. The wheels of the car nearest the bridge had either just touched or just missed the corner of the bridge. There were skid marks indicating that the brakes were applied just about the time the front of the car was going over the edge. A jury returned a verdict in favor of the plaintiffs and from the judgment which followed this appeal is taken.

The first point raised is that the demurrer to the complaint should have been sustained. It is contended that the statute upon which this action is based (Stats. 1923, p. 675, sec. 2) is in derogation of the common law and must be strictly construed, and that since it does not specifically give a right of action to the heirs of a deceased person, such an action cannot be maintained. It is argued that those cases where such an action has been permitted or which have been treated as if such a right existed, are not in point, since this particular question was not therein raised (see *Gorman* v. *County of Sacramento*, 92 Cal. App. 656 [268 Pac. 1083]; *Brooks* v. *City of Monterey*, 106 Cal. App. 649 [290 Pac. 540]). A part of the act in question reads:

"Counties . . . shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways . . . "

Aside from the consideration of any other statutes, we are unable to see why the "injuries to persons", referred to in this statute, do not include such injuries as may be caused to persons by reason of the death of others as well as injuries to persons directly involved not resulting in death. We think the injury suffered by these plaintiffs is covered by the statute and that the demurrer was properly overruled.

It is next contended that the evidence does not support the verdict in three respects: (1) That the evidence is not sufficient to show that the bridge or it approaches were dangerous. It is argued that this was not a main highway and that no one should expect to find thereon warning

signs or danger signals, or such protections as are to be found on main paved highways. Also that the bridge is shown not to have been unsafe by evidence that it had been there for twenty years; that only three or four accidents had happened thereon in previous years; and that no one of the supervisors had heard of an accident thereon. On the other hand, the evidence shows that this road leads across three main paved highways and that it is considerably used. The bridge was at a sharp angle to the road, approximately on the same level, with no guard-rail or fences and no warning signs. There had been at least three accidents there before, two of them within one year, which would tend to show the dangerous character of the bridge (*Gorman* v. *County of Sacramento, supra*). In addition to this, the jury was taken to view the bridge and its environments, and all reasonable inferences must be indulged in support of the verdict. It cannot be held that the verdict is not without support in this respect. ■ (2) That the evidence does not show that the board of supervisors had knowledge of the condition of this bridge. The supervisor of the district in which the bridge is located testified that he had been over the bridge a number of times before the date of this accident. He then saw and had actual knowledge of the conditions which the jury has found to be dangerous. Another supervisor testified that he had been over the bridge a good many times. While all of the supervisors testified that they knew of no complaint having been filed with the board as to the condition of this bridge, only one of them testified that he had not heard of previous accidents at that point. One witness testified that several years before he had told a member of the board of supervisors that the bridge was dangerous. The only contention made by the appellant in this regard is that it was necessary for the plaintiff to show actual knowledge on the part of the supervisors. This contention has been settled adversely to the appellant. In *Boyce* v. *San Diego High School Dist.*, 215 Cal. 293 [10 Pac. (2d) 62, 63], the court said: "It may also be observed that actual knowledge is not necessary, long continued neglect being such constructive notice as to fix liability on the district." In *Dawson* v. *Tulare Union High School*, 98 Cal. App. 138 [276 Pac. 424, 426], it was said:

"The statute does not provide that actual notice is a prerequisite to recovery in such a case. The long-continued existence of a defective condition may establish constructive notice thereof. (*Wurzburger* v. *Nellis,* 165 Cal. 48, 53 [130 Pac. 1052]; 43 C. J. 1043–1057.) It may be inferred from the circumstances in evidence that the principal had constructive notice of the defective condition and he certainly had 'authority to remedy such condition'. To hold that actual notice is required in such a case would be to place a premium on indifference and neglect of duty. 'Neglect of duty cannot be made the basis of exemption from liability.' (*Kramer* v. *City of Los Angeles,* 147 Cal. 668, 681 [82 Pac. 334, 339].)''

In our opinion, knowledge of the condition of the bridge was sufficiently brought home to the board of supervisors.

▮ (3) That the evidence conclusively shows the deceased to have been guilty of contributory negligence, in that he was not looking at the road, that he was looking through the frosted windshield and could not see, or that he was driving at an excessive rate of speed. It is argued that the probability is that the deceased, during the mile and three-quarters he traveled, got very cold and that he tired of leaning out to look around the windshield and relaxed his vigilance. While contributory negligence was not pleaded, the case seems to have been tried with that issue in mind. When last seen, the deceased was leaning out and looking around his windshield and the lights of his car were burning. The tracks showed that his car went down the center of the road and proceeded straight ahead. He had only gone a mile and three-quarters and the inference is just as possible that the accident was caused by the sharp turn and conditions at the bridge, as that he had relaxed his vigilance or that he was driving too fast. Not only is the inference that the deceased continued to use care, reasonably to be drawn from the evidence, but the plaintiffs are entitled to the presumption that the deceased used ordinary care for his own safety (*Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 Pac. 529]; *Gorman* v. *County of Sacramento, supra*). The appellant argues that this presumption does not apply where the evidence conclusively shows that the contrary is true. Such is not the situation here, and the

question of contributory negligence was one of fact for the jury.

Error is next claimed in that the court refused to admit evidence to the effect that it was not customary for the supervisors of this county to erect signs warning travelers of their approach to bridges in that particular district in which this bridge was situated. This evidence was properly refused (*Gorman* v. *County of Sacramento, supra*).

The next point raised is that the court erred in instructing the jury to the effect that the deceased is presumed to have used ordinary care for his own safety, it being argued that the evidence conclusively shows contributory negligence on the part of the deceased, thereby dispelling this presumption. Since the facts do not show contributory negligence as a matter of law, the instruction was properly given (*Gorman* v. *County of Sacramento, supra; Brooks* v. *City of Monterey, supra*).

Error is claimed in instructing the jury to the effect that the statute in question (Stats. 1923, p. 675, sec. 2) does not require that actual notice of the dangerous condition shall have been given to the county, but that notice may be inferred from the circumstances, and also that implied or constructive notice of defective conditions arises from facts from which it may be reasonably inferred or from proof of circumstances from which it appears that the defect ought to have been known and remedied. The instructions complained of correctly stated the law (*Boyce* v. *San Diego High School Dist., supra; Dawson* v. *Tulare Union High School, supra*).

Error is next claimed in that the court refused to admit evidence to the effect that it was not customary for the supervisors of this county to erect signs warning travelers of their approach to bridges in that particular district in which this bridge was situated. This evidence was properly refused (*Gorman* v. *County of Sacramento, supra*).

The last point raised is that the court erred in denying a motion for a new trial. The only point not heretofore covered is that this motion should have been granted upon the ground of newly discovered evidence. The only new evidence relied on was to the effect that the deceased had been over this particular route either "three or four" times or "four or five" times, according to different witnesses. Evidence was admitted at the trial that the deceased had been over this road "two or three" times or "three or four" times. It was undisputed that he had been over the road several times and the difference in the number of times is trivial and immaterial and the court did not abuse its discretion in refusing a new trial upon such a showing.

We may add that it fully appears from the record that no satisfactory showing of diligence was made.

No reversible error appearing, the judgment is affirmed.

Jennings, J., and Scovel, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 30, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 4, 1932.