[Civ. No. 925.   Fourth Appellate District.—September 14, 1932.]

CHARLES H. EDWARDS et al., Respondents, v. CITY OF SAN DIEGO (a Municipal Corporation), Appellant.

2

C. L. Byers, City Attorney, for Appellant.

Gray, Cary, Ames & Driscoll for Respondents.

BARNARD, P. J.—On July 28, 1930, while standing in what is known as the "Plaza" in the city of San Diego, Dorothy Edwards, a girl of nineteen, was struck and killed by the falling top of a palm tree. This is an action for damages brought by her parents under the provisions of the statute adopted in 1923 (Stats. 1923, p. 675). The Plaza is a small public park in the heart of the business section of San Diego. Around this park and just within the sidewalk lines there is a row of cocos plumosa palms, the trees being approximately 35 or 40 feet in height. The park is much used by the general public, including some 3,500 to 5,000 people who daily wait there for street-cars. On the day named, Dorothy Edwards was standing in the park awaiting a street-car. Without sound or other warning the top of one of these palm trees, weighing from 350 to 400 pounds, suddenly fell, striking the girl and causing injuries from which she died. There is evidence that the day was calm and clear with only a slight breeze blowing. While the head of the tree which fell was green and to all appearances like the other trees growing near by, it appears that the trunk of the tree was affected with dry rot and badly decayed. The break occurred about one and a half or two feet below the point where the fronds of the palm branched out and some 25 or 30 feet above the ground. At the point of the break the tree had a diameter of about ten inches but that portion of the trunk inside the bark was decayed to within a couple of inches of the center, leaving only a central heart through the tree about two inches in diameter which was not decayed.

A verdict for $20,000 was returned by a jury, which was later reduced by the court to $12,000 in connection with a motion for a new trial. From the judgment which followed, this appeal is taken.

The first point raised is that actual knowledge of the condition of the tree was not brought home to the appellant and that constructive notice thereof is not sufficient under the statute. It has now been settled that constructive notice in such a case is sufficient and that this may be established by showing long continued neglect of conditions that should have been known and seen. (*Boyce* v. *San Diego High School Dist.*, 215 Cal. 293 [10 Pac. (2d) 62]; *Dawson* v. *Tulare Union High School*, 98 Cal. App. 138 [276 Pac. 424]; *Bennett* v. *Kings County*, 124 Cal. App. 147 [12 Pac. (2d) 47].)

The only other point raised is that the verdict and judgment are entirely unsupported in that the evidence is wholly insufficient to establish constructive notice to the appellant city of the dangerous condition of the tree in question. The usual rule is that where there is any substantial evidence of a state of facts or circumstances which should impute notice, the question as to whether such facts are sufficient to constitute notice to a party is one of fact for the jury. The rule is thus stated in 43 Corpus Juris, 1288, 1289: ''Except where the evidence is legally insufficient, or the facts are undisputed and but one inference can be reasonably drawn from them, it is ordinarily a question for the jury whether, under all the circumstances, the municipality had notice, actual or constructive, of the particular defect or obstruction, as whether under the circumstances the defect or obstruction existed for such a length of time as to charge the municipality with constructive notice thereof; or whether, considering its nature, location, and duration, the exercise of ordinary care and diligence by the municipal authorities would have disclosed its existence and danger in time for repair or warning before plaintiff received his injury therefrom; and if there is any evidence of notice the court cannot order a nonsuit, although it may set aside a verdict for plaintiff if contrary to or against the weight of the evidence.''

The question as to the length of time necessary to constitute ''long continued neglect'', is also largely one of fact which naturally depends on surrounding circumstances and varies with the facts of each case. A higher degree of care and diligence and a correspondingly shorter time might well be required in discovering and remedying a dangerous

condition in a small park in the center of a populous city, largely used by the public and with few trees to inspect, than might be required in a more isolated spot frequented by fewer people and with a larger number of trees.

In the light of these rules, we think there is evidence in the record which supports this judgment in the respect complained of. An experienced nurseryman testified that about two months prior to the injury in question, while standing in the Plaza, he observed a good-sized limb fall from a tree and strike a woman; that this limb was rotten and decayed on the end; that a police officer came over and made some notes; and that at that time he went around and looked at the other trees in the park and noticed that several of them were rotten, cracked open and spongy in appearance. He further testified that on that occasion he observed the tree which is involved here; that about three feet below where the limbs branched out the tree looked spongy and rotten; that there was a spot about six or eight inches in diameter; and that this condition was apparent from the sidewalk. Another witness, a gardener, testified that he had observed this tree at various times during the latter part of 1928 and during a part of 1929; that the tree was partly decayed; that the decayed part was one or two feet below the "shingles"; that the tree appeared to be afflicted with dry rot and that in his opinion approximately one-third of the circumference was thus affected; and that in October, 1929, this decay was observable from across the street. He further testified that he examined the tree both from the sidewalk across the street and from the sidewalk immediately beneath the tree; that the decayed portion covered an area of at least two or three inches; and that the decayed spot "was not covered with outer bark, it was all decayed and falling down, the outer bark had decayed inwardly, the bark had fallen off". An agricultural inspector for the county of San Diego testified that he saw the trunk of this tree as it remained standing after the accident and that it showed other places where the dry rot had attacked the tissue, and that he saw this condition from the ground. He also testified that a person could tell that this particular tree was diseased without probing it. Another witness testified that he examined the portion of the tree which had

broken off; that it was rotten and decayed; that it looked like a dry rot; that he looked up at the trunk of the tree which remained standing and observed that three or four feet down from the top of the standing portion "there were decayed places, that you could tell where it was sloughed off, the bark had sloughed off". Several other witnesses testified to the effect that the butt end of the fallen portion of the tree was rotten and that the decayed portion could be crumpled in the hand, and that a similar condition prevailed at the top of the stump where the break occurred. There was also evidence that it would take several years for the rot starting from the outer portion of the tree to reach the stage of development existing at the time of the break.

Under the charter of the city of San Diego, all parks and plazas were under the control of the board of public works, and directly in charge of a superintendent of parks. This superintendent of parks testified that, in the line of his duty, he examined the trees in the Plaza several times a year to see if they needed trimming; that there were 24 or 26 trees in this park; that he observed the tree involved in this case, among others, at such times; that he made such an examination the latter part of June, 1930; that "prior to June" he made no examination of these trees for disease; and that "There were no symptoms of disease discernable anywhere that I saw. Of course I only gave it a cursory overlook so as to see the necessity for trimming."

While a number of witnesses testified that on various occasions they had observed this particular tree from the ground and were unable to see anything wrong with it, it appears from the evidence above set forth that a condition existed which had been observable to others for a period of nearly two years, and which may well have been taken by the jury as one which should have been seen and remedied by the city officials. We think the evidence referred to is sufficient to support the verdict and judgment, and that it may not be said as a matter of law that the evidence is not sufficient to establish such notice to the city as is requisite under the statute.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 14, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 10, 1932.