[L. A. No. 16562. In Bank.—May 24, 1938.]

WALTER GEORGE, Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation) et al., Respondents.

Bradner & Weil and Jerold E. Weil for Appellant.

Ray L. Chesebro, City Attorney, Frederick von Schrader, Assistant City Attorney, Leonard Husar and Bourke Jones, Deputies City Attorney, LeRoy M. Edwards and Neil G. Locke for Respondents.

Ray L. Chesebro, City Attorney, S. B. Robinson, Chief Assistant City Attorney for Water and Power, Mark A. Hall, Assistant City Attorney, and Wendall Mackay, Deputy City Attorney, as *Amici Curiae*, on Behalf of Respondents.

CURTIS, J.—Plaintiff commenced this action to obtain compensation for damages alleged to have been suffered when his automobile was caused to leave a public street in the City of Los Angeles and to strike poles which had been erected by defendant Los Angeles Gas and Electric Corporation. Both the City of Los Angeles and the Los Angeles Gas and Electric Corporation were named parties defendant. Each defendant filed a demurrer and both demurrers were sustained without leave to amend. From the resulting judgment plaintiff appeals.

From the allegations in plaintiff's complaint it appears that on April 11, 1936, plaintiff was driving his automobile in a northerly direction along Allesandro Street in the City of Los Angeles in a careful and prudent manner. Rosebud Avenue runs into Allesandro Street from the east but does not cross Allesandro Street. The space at the intersection is referred to, apparently for lack of a better expression, as the "triangular portion". Plaintiff further alleged that the street was in a dangerous and defective condition; that a dip or depression had been constructed in the street which was such as to cause automobiles proceeding northerly to be thrown from their intended course of travel and into and upon the curbing along the easterly side of said street; the dip or depression lay within the triangular portion of Allesandro Street and consisted of a downward pitch or grading toward the easterly curb and reaching its lowest point at a storm drain which extended approximately nine feet along the curb and two and one-half feet out into the traveled portion of the street; the cement-paved portion of the street had no appreciable slope or pitch toward the curb, but that within the triangular portion the street pitched curbward until the drop became such that, beginning at a point eight feet out in the street from the curb and opposite the storm drain, the street dropped downward toward the curb at such an angle that it was approximately eleven inches lower at the curb than at a point eight feet out from the curb; the street was sixty feet wide and perfectly straight for more than one thousand feet southerly of the place of the accident where the street narrowed from sixty feet to forty feet; the easterly curb line was perfectly straight for over one thousand feet south of the place of the accident, where the curb deviated and curved in a direction westerly; the street was paved in cement lanes

or strips southerly of the triangular portion referred to, but the two most easterly lanes terminated at the beginning of the triangular portion, and said triangular portion was paved with dark asphalt; two "telephone" poles stood within one foot of the curb at the scene of the accident; there was insufficient light at night to reasonably illuminate the locality; no warning signs of any kind were in place; the conditions were such as to create a hazard that persons traveling northerly on said street at night in either of the two cement lanes or strips nearest the right-hand curb would be led to believe that said street continued straight ahead, but would find that the light-colored cement lanes or strips would suddenly terminate, and the roadway would apparently "blank out", and by reason of the manner of paving, lack of warning signs, change in course of direction of curb line, and dip or depression, an automobile would be caused to strike said easterly curb, leave the traveled portion of said street, and strike one or both of said poles; that the dip or depression was so located and so graded as to create a hazard that should an automobile enter into or upon the dip, the driver would be prevented from turning his automobile to the left to avoid colliding with the curb, but, on the contrary, the dip or depression would cause the automobile to swing to the right and strike the curb, leave the traveled portion of street and strike one or both of the poles; by reason of the said dangerous and defective condition and the negligence and failure of the officials of defendant city, plaintiff's automobile was caused to leave the traveled portion of the street and crash against the poles of defendant company. Plaintiff further alleged the filing of a verified written claim with the officials of defendant city and the rejection of the claim; and that defendant city and its officers had knowledge and notice of the dangerous and defective condition of the street for several years prior to the day of the accident.

The action is brought under the so-called Public Liability Act of 1923 (Stats. 1923, chap. 328, p. 675), which provides in section 2 thereof that municipalities "shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets". This statute has frequently been before this court and also the District Courts of Appeal of the state. The purpose and scope of the statute have been fairly settled by the decisions hereinafter cited.

█ In support of the ruling of the trial court in sustaining the demurrer of the City of Los Angeles, respondent city contends that where the injury is caused by a particular plan of improvement adopted and carried out by a municipality, no cause of action against the municipality exists unless the plan adopted is beyond reasonable grounds arbitrary and palpably dangerous. While this may be the rule in some other jurisdictions as indicated by the authorities cited by said respondent, in view of the Public Liability Act of 1923, this rule cannot have any controlling force in this state. The statute, as we have already indicated, makes municipalities liable for injuries resulting from dangerous or defective conditions of its public streets under certain conditions set forth in said statute. We find nothing in these conditions which requires any different rule to be applied in a case where the dangerous or defective condition is the result of a plan of construction adopted by the city than in a case where such condition results from the street being permitted to remain out of repair after its construction under some general plan adopted by the municipality. Since the enactment of the Public Liability Act of 1923, numerous cases have been before this and the several District Courts of Appeal in which the municipality has been held liable in damages for injuries arising from the construction of the sidewalk or street when such construction created a dangerous or defective condition in the sidewalk or street. (*Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 Pac. 118]; *Bennett* v. *Kings County*, 124 Cal. App. 147 [12 Pac. (2d) 47]; *Uttley* v. *City of Santa Ana*, 136 Cal. App. 23 [28 Pac. (2d) 377].)

In the following cases the same question was before the court: *Rodkey* v. *City of Escondido*, 8 Cal. (2d) 685 [67 Pac. (2d) 1053], and *Wilkerson* v. *City of El Monte*, 17 Cal. App. (2d) 615 [62 Pac. (2d) 790]. While the judgment in each of these cases in favor of the injured party was reversed, the reversals were not on the ground that the alleged dangerous condition in the street resulted from the improper construction, but for the reason that the defect was so trivial as not to charge the city with constructive notice of its dangerous character. We, therefore, find nothing in the Public Liability Act of 1923, or in any of the cases decided since its enactment, which justified the contention of the respondent city that in cases arising under said statute, where the in-

juries are caused by reason of the defective construction of an improvement under a general plan adopted by the city, the latter is not liable unless the plan adopted is arbitrary and palpably dangerous beyond all reasonable doubt.

■ The rule adopted by the courts of this state is that while a municipality is not an insurer of the safety of travelers on its streets, the duty is imposed upon it by the Public Liability Act of 1923 to exercise ordinary care to maintain its streets in a reasonably safe condition for their use in a proper manner. (*Rodkey* v. *City of Escondido, supra, Nicholson* v. *City of Los Angeles,* 5 Cal. (2d) 361 [54 Pac. (2d) 725], *Waldorf* v. *City of Alhambra,* 6 Cal. App. (2d) 522 [45 Pac. (2d) 207], *Beeson* v. *City of Los Angeles,* 115 Cal. App. 122 [300 Pac. 993], and *Brooks* v. *City of Monterey,* 106 Cal. App. 649 [290 Pac. 540].) ■ While as a general proposition the acquisition, construction, maintenance and repair of roads and streets are undisputed functions of the government, and a municipality reserves the right to change its street improvement system when it is reasonably wise to do so, yet if in the discharge of this function or in the exercise of this right, it creates a dangerous and defective condition in its public streets, it is liable for any ''injuries to persons or property resulting from'' such condition provided it had knowledge of such condition and failed or neglected to remedy said condition within a reasonable time after acquiring such notice. This is the construction placed upon the Public Liability Act of 1923 by the courts in *Rafferty* v. *City of Marysville* and kindred cases cited above. ■ This liability is one for negligence (*Whiteford* v. *Yuba City Union High School Dist.,* 117 Cal. App. 462, 464 [4 Pac. (2d) 266]; *Brooks* v. *City of Monterey,* 106 Cal. App. 649, 654 [290 Pac. 540]), and the question of the municipality's negligence is for the determination of the jury. (*Norton* v. *City of Pomona,* 5 Cal. (2d) 54 [53 Pac. (2d) 952].)

It is contended by the respondent city that this conclusion gives to the jury, or to the trial court when the case is tried without a jury, the right to pass upon the discretion of the municipal authorities to adopt a system or general plan of improvement of its streets, sidewalks, or other public works. We do not consider that our conclusion goes to that extent. We simply hold that under the statute the municipality is liable for injuries resulting from the dangerous or defective condition of its public street, whether such condition arises

from the construction of said street in the first instance, or is due to a defect created therein after its construction.

Great reliance is placed by the respondent City of Los Angeles upon the two recent cases of *Waldorf* v. *City of Alhambra, supra,* and *Robertson* v. *City of Long Beach,* 19 Cal. App. (2d) 676 [66 Pac. (2d) 167]. In each of these cases the injury was caused by a collision of an automobile with a "jog" or "offset" in the street along which the automobile was being operated. It was held in the Waldorf case, and followed in the other cited case, that there is no law of this state which requires a municipality to maintain barriers or warning devices at "jogs" or "offsets" in the streets of the municipality; that in almost every city of size in the state, some streets are laid out and improved without uniformity as to width or direction, resulting in "jogs" or "offsets" and that where there is nothing in the construction of such a street to conceal its real condition, no liability attaches to the municipality for injuries arising out of such construction.

The factual situation in each of these two cases differs materially from that existing in the present action. It is well settled in this state that when dealing with cases falling under the provisions of the Public Liability Act of 1923, each of such cases must depend upon its own state of facts and that no hard-and-fast rule can be applied in the great majority of cases. (*Rafferty* v. *City of Marysville, supra,* at page 660; *Waldorf* v. *City of Alhambra, supra,* at page 526; *Hook* v. *City of Sacramento,* 118 Cal. App. 547 [5 Pac. (2d) 643].) In each of the Waldorf and Robertson cases, as we have seen, the claimed dangerous condition was a "jog" or "offset" in the street at its intersection with a cross-street, where the abutting property extended beyond the property line on the opposite side of the cross-street. The abutting property was surrounded by a curb some six inches in height, and there was also a sidewalk and parkway within the curb line. These, the court held, constituted barriers or warnings sufficient to avert disaster and readily visible to the driver of an approaching automobile. The defective and dangerous condition which it is alleged existed in the street involved in the present action was within the street itself. The storm drain was constructed as a part of the street and in the traveled portion thereof. There was no barrier between it and any other part of the street to warn those travel-

ing over the street of its existence. It was not only lower than the surrounding area of the street, but there was a gradual and somewhat precipitous slope from near the center of the street into the drain, so that the course of one approaching this area from a southerly direction would be diverted toward the curb and into the dip or drain and then against and over the curb. This condition was rendered more dangerous by the gradual narrowing of Allesandro Street, so that the curb along the easterly side of said street for some distance on either end of the storm drain did not run parallel with the center of the street but inclined in a westerly direction toward the center of the street. Due to this deviation in the curb, if an automobile were forced into the storm drain, it would be much more liable to collide with the curb than if the line of the curb at that point were parallel with the center of the street. This condition in the street was rendered still more hazardous by reason of the insufficient lighting of the street and the change of the color of the material used in the construction of the street from the light-colored concrete or cement used southerly of the intersection to the dark asphalt in the intersection and in that portion of Allesandro Street in which the storm drain is located. By reason of the marked difference in the factual situation in the present case from those shown to have existed in the case of *Waldorf* v. *City of Alhambra, supra,* and *Robertson* v. *City of Long Beach, supra,* we are unable to agree with the respondent city that the decisions in those cases are determinative of the issues involved in the instant case.     As the complaint in this case set forth facts showing the existence of a dangerous and defective condition in Allesandro Street, together with notice of such condition by the officers of the city and their failure to remedy such condition, it met all requirements of the statute, and was not vulnerable to a general demurrer. The court, therefore, erred in sustaining said demurrer.

In the complaint it is alleged that the respondent, the Los Angeles Gas and Electric Corporation, constructed, and on the day of the accident maintained, two "telephone" poles on the easterly side of Allesandro Street and inside and within one foot of the easterly curb line of said street. One of said poles was approximately forty feet northerly of the north line of Rosebud Avenue and the other was approximately one hundred and forty feet northerly from said first-

mentioned pole. It is further alleged in the complaint "that the maintenance of said poles and each of them in their respective locations was careless and negligent, and they and each of them were carelessly and negligently maintained without markings or warning signs of any kind, and were carelessly and negligently maintained so close to the traveled portion of said Allesandro Street as to constitute a hazard to persons traveling by automobile in a northerly direction along said Allesandro Street at and near said intersection; that said defendant Los Angeles Gas and Electric Corporation could have and should have reasonably anticipated that because of the hereinbefore alleged dangerous and defective condition of said Allesandro Street at and near said intersection, of which condition said last-mentioned defendant had full knowledge, automobiles might be caused to leave the traveled portion of said Allesandro Street and strike against said poles, thereby causing injury to person and property; that said defendant Los Angeles Gas and Electric Corporation nevertheless negligently and carelessly maintained said poles and each of them at said respective locations, and negligently and carelessly failed to place thereon or on either of them any markings or warning sign whatever.

In paragraph VI of said complaint, it is alleged that due to the negligence of the two respondents, as in said complaint alleged, plaintiff's automobile "was caused to leave the traveled portion of said Allesandro Street and to crash against and collide with said two poles" and by reason thereof plaintiff sustained the injuries for which he seeks in this action to recover damages.

We can see no substantial difference in the factual situation in this case in so far as it relates to the respondent Los Angeles Gas and Electric Corporation, and that set out in the case of *Norton* v. *City of Pomona and Southern California Edison Co.*, 5 Cal. (2d) 54 [53 Pac. (2d) 952], in which the Edison Company was held liable for damages sustained by Mr. and Mrs. Norton when the automobile which they were operating, by reason of a dangerous condition in the street, ran upon and over the curb and crashed into a pole maintained by the Edison Company within but flush with the curb along said street. In sustaining the judgment of the trial court in favor of the plaintiffs in said action and against the Edison Company, we held as follows: "Herein

plaintiffs sued upon the theory of negligence—not that of nuisance—and contend that the City of Pomona negligently permitted a dangerous and hazardous condition of a public street to exist, and that the Edison Company negligently maintained a pole in such dangerous place, the two acts concurrently operating to proximately cause the injuries to plaintiffs. In this case it became a question of fact for the court to determine whether under the circumstances shown the maintenance of the pole and the street, separately or together, constituted negligence on the part of either or both defendants (*Barrett* v. *Southern Pacific Co.* (207 Cal. 154 [277 Pac. 481]), *supra*), and whether such negligence, if any, proximately caused the injuries to plaintiffs, without contributory negligence on their part. The evidence establishing the facts and circumstances herein is such that reasonable minds might draw different and opposite inferences both as to negligence and contributory negligence. The court found that the defendant Edison Company negligently erected and maintained the pole in the place shown, that such placing and maintaining constituted a hazard to the traveling public and caused the happening of the collision, and that there was no negligence on the part of plaintiffs contributing thereto. There was ample evidence to support the conclusions deduced therefrom by the court, and under the well-known rule these findings are binding and conclusive on this appeal and cannot be substituted by any of our own deductions.''

Said respondent seeks to distinguish that case from the instant case by pointing out that in the Norton case the pole was flush with the curb while in the instant case the poles were approximately one foot from the curb. This effort, in our opinion, has not been successful. In each case there was a dangerous condition in the street which caused the automobile traveling along the street to leave the main traveled portion thereof and to run upon and over the curb and along the parkway within the curb line. Evidently the automobile after running over the curb would have crashed into the pole whether the pole was located one foot within, or flush with the curb. In the case of *Gerberich* v. *Southern California Edison Co.*, 5 Cal. (2d) 46 [53 Pac. (2d) 948], the pole into which the plaintiff crashed was located some six feet from the traveled and paved portion of the roadway. Yet the defendant utility company was held negligent in its maintenance.

The Gerberich case is strongly relied upon by the appellant, and we think the ruling therein, together with that found in the Norton case, fixes a liability upon the respondent Los Angeles Gas and Electric Corporation for the negligent maintaining of said pole in the manner stated in the original complaint. The following additional cases furnish further authority in support of this conclusion: *Stewart* v. *San Joaquin Light & Power Corp.*, 44 Cal. App. 202, 207 [186 Pac. 160]; *Carroll* v. *Central Counties Gas Co.*, 74 Cal. App. 303, 307 [240 Pac. 53]; *Lim Ben* v. *Pacific Gas & Elec. Co.*, 101 Cal. App. 174, 179 [281 Pac. 634]; *Barrett* v. *Southern Pac. Co.*, 207 Cal. 154, 160 [277 Pac. 481].

The judgment as to each defendant is reversed.

Waste, C. J., Edmonds, J., Langdon, J., Houser, J., and Seawell, J., concurred.

Rehearing denied. Shenk J., and Houser, J., voted for a hearing.