[L. A. No. 16923.   In Bank.—April 6, 1939.]

MIKE ARELLANO et al., Respondents, v. CITY OF BUR-
BANK (a Municipal Corporation), Appellant.

Ralph W. Swagler, City Attorney, for Appellant.

Ray L. Chesebro, City Attorney (Los Angeles), Frederick Von Schrader and Leon T. David, Assistants City Attorney, Bourke Jones, Deputy City Attorney, Ernest A. Wilson, City Attorney (San Mateo), Clyde Woodworth, City Attorney (Inglewood, South Gate, Manhattan Beach and Redondo), George W. Trammell, Jr., City Attorney (Long Beach), Albert Mansfield, City Attorney (Redwood City), Paul F. Garber, City Attorney (Monrovia), and Aubrey N. Irwin, City Attorney (Glendale), as *Amici Curiae,* on Behalf of Appellant.

Mills, Hunter & Dunn, Paul J. Quigley, Edward C. Mills and Harold J. Hunter for Respondents.

CURTIS, J.—This cause was transferred to this court after decision by the District Court of Appeal to give further consideration to the contention of the appellant that the decision of the District Court of Appeal was in conflict with certain prior decisions of that court and particularly the decisions in the cases of *Waldorf* v. *City of Alhambra,* 6 Cal. App. (2d) 522 [45 Pac. (2d) 207], and *Robertson* v. *City of Long Beach,* 19 Cal. App. (2d) 676 [66 Pac. (2d) 167]. After a careful study of those decisions, we find no conflict between them and the decision of the District Court of Appeal in the present action. While the collision in each of these cases occurred upon a street in which there was a ''jog'' or ''offset'' at the intersection of said street, in the Waldorf and Robertson cases, the driver of the automobile after crossing over the intersection collided with the curb and sidewalk in front of the abutting property which extended beyond the property line on the opposite side of the cross street. In other words, he ran over and upon the curb and sidewalk along the property which formed the ''jog'' in the street. It was held that the curb, sidewalk, and the parkway with the trees growing in the parkway, in front of that portion of the property included within the jog or offset ''constitute a barrier or warning sufficient to avert disaster and as readily visible to the alert driver as a sign informing him of the condition'' in the street. In the present action the driver did not collide with the jog in the road, but drove across the intersection onto the unpaved right of way of the railway company, and there was no curb, sidewalk, or parkway, or other barrier to warn him of the changed condition in the highway. The curb referred to in the present action was not across the course which the automobile was traveling as it was in each of the two cases cited by appellant, but was parallel to said course and only a surface of some eight inches square was visible to the driver. Due to the fact that the street west of the crossing was only 40 feet wide, it was necessary for the driver to operate the automobile along or near the car track. This course when continued beyond the crossing brought him onto the unpaved portion of the railway right of way, and as we have just stated, there was no barrier of any kind whatever to inform him of the changed condition in the street.

As stated in the opinion of the District Court of Appeal, "when dealing with cases falling within the provisions of Public Liability Act of 1923, each of such cases must depend upon its own state of facts". As the factual situations in the Waldorf and Robertson cases were fundamentally different from that in the instant case, the decision in those cases should not control the present decision. We, therefore, adopt the opinion of the District Court of Appeal, written by Presiding Justice York, as the opinion of this court. It is as follows:

"This is an appeal by the City of Burbank from a judgment in favor of respondents, Mike Arellano and Frances Arellano, father and mother of Valentina Alma Arellano, for her death, and in favor of respondent Tomasa Dorothy Arellano for personal injuries resulting from an automobile accident which occurred at the intersection of Glenoaks boulevard and Providencia avenue in the City of Burbank at 8:20 o'clock on the evening of October 5, 1935.

"At the intersection where the accident occurred, Glenoaks boulevard and Providencia avenue cross at right angles, Providencia running northerly and southerly and Glenoaks easterly and westerly. Abutting the easterly side of the intersection is the westerly end of the Pacific Electric Railway Corporation's forty-foot right of way extending easterly. For some distance west of the intersection, Glenoaks is fifty feet wide; at the east side of the intersection, Glenoaks divides and abuts the Pacific Electric right of way on the north and south thereof, being forty feet wide on the north side and forty feet wide on the south side of the said right of way. Pacific Electric Railway Corporation maintains an electric car track along Glenoaks west of and across said intersection, continuing on the said forty-foot right of way easterly of said intersection. The streets within the intersection, as well as Glenoaks to the west thereof, are paved with a surfacing of the same substance, color and appearance, and the top of the rails of the car track is flush with the surface of the pavement. The forty-foot right of way east of the intersection is not paved, and for about six feet immediately east of the intersection, the top of the ground is about level with the top of the rails and then drops off to about the top of the ties, or six inches below the rails. Westerly along Glenoaks from the intersection, the southerly rail of the car track is seventeen feet and three inches north of and parallel with the south curb of Glenoaks, and continues

in a straight line across the intersection and upon the right of way.

"East of the intersection and dividing the right of way from the southerly portion of Glenoaks there is a concrete curb which abruptly ends at the east side of the intersection, presenting to the west a face eight inches wide at the bottom, eight inches high and reducing to six inches at the top. This curb does not extend across Glenoaks at the easterly side of the intersection, and the end of the said curb is about three feet and nine inches to the north of the projected line of the southerly curb line of Glenoaks west of the intersection. About three feet and nine inches to the north of this dead end curb is a pole sixteen inches in diameter painted dark for about eighteen inches from the ground and for ten or fifteen feet above that point has been painted with aluminum paint which has lost its lustre so that the pole appears drab or dull gray. To the east of this pole other poles and posts are located extending easterly in the direction of the car tracks. To the north of this pole, at the east side of the intersection, the car track extends into an open space free from posts or poles and across which there is no curb, thereby presenting to one approaching from the west an apparent unobstructed continuation of the boulevard and car track to the east of the intersection. In other words, the situation is such that a person driving easterly on Glenoaks with his left wheels 'straddling' the car track would collide with the unpaved right of way and drop down upon the railway ties, unless he turned either right or left around the end of the unpaved right of way and thereby reached the north or south lane of Glenoaks boulevard.

"At the intersection in question boulevard stop signs were maintained regulating traffic on Providencia avenue, but no such signs were maintained on Glenoaks and there were no speed signs on Glenoaks west of said intersection at the time the accident occurred.

"On the evening of October 5, 1935, the employees of a dehydrating plant located in Burbank had planned a surprise party at the home of Joe Suppon, one of their foremen. Urban Goebel, an employee of the plant, called for Howard Wills, another employee, and after driving around in Goebel's car for about three-quarters of an hour, they proceeded to the Suppon home, where they met the two Arellano girls, who were also attending the party. Since it was early, i. e., around 8 o'clock, and the other guests had not arrived, the

two boys asked the girls to take a ride with them around the block and return later to the party. Urban Goebel was driving the car, next to him sat Valentina Alma Arellano, and to her right sat Howard Wills with Tomasa Dorothy Arellano sitting on his lap. Some fifteen or twenty minutes later, as they traveled easterly on Glenoaks, the car 'straddling' the southerly rail of the Pacific Electric Railway car track, they approached Providencia avenue, passed through the intersection and, as Goebel turned abruptly to the right to avoid the tall pole on the railway right of way, his left front wheel struck the projecting end of the curb at the south side of the said right of way, causing him to lose control of his car. The car continued at an accelerated speed for a distance of two hundred thirty feet easterly on Glenoaks boulevard, where it struck a pole in the parkway resulting in the death of Valentina Alma Arellano and Urban Goebel, and the serious injury of respondent Tomasa Dorothy Arellano.

"The instant action was instituted under the so-called Public Liability Act of 1923 (Stats. 1923, chap. 328, p. 675), section 2 of which provides that municipalities 'shall be liable for injuries to persons and property resulting from dangerous or defective condition of public streets'. A directed verdict was rendered in favor of the Pacific Electric Railway Corporation, and from the judgment against the City of Burbank for $5,000 for the death of Valentina Alma Arellano, and $10,000 for the injuries sustained by Tomasa Dorothy Arellano, this appeal is prosecuted.

"Appellant urges (1) that bottleneck conditions of streets are not embraced within the term 'dangerous and defective condition of public streets', as used in said Public Liability Act; (2) that the driver of the car was guilty of negligence as a matter of law and such negligence was the sole proximate cause of the accident; (3) that the Public Liability Act does not authorize recovery for wrongful death, and that the damages awarded therefor were excessive; (4) that it was prejudicial error to charge the jury on general negligence and without regard to the limitation of duty imposed upon the City of Burbank under the Public Liability Act; (5) that the third amended complaint failed to state a cause of action and it was error to deny appellant's motions for nonsuit and for directed verdict; (6) that the verdict is not supported by the law or the evidence.

"As is usual in cases of this character, the evidence respecting the circumstances surrounding the accident is conflicting. The jury having determined that the accident occurred through the negligence of appellant, the rule of law is well settled that all reasonable inferences are to be indulged in support of the conclusion reached by the jury; that when two or more inferences can be reasonably deduced from a certain set of facts or circumstances, a reviewing court is not permitted to substitute its deductions for those of the jury. (*Gorman* v. *City of Sacramento,* 92 Cal. App. 656, 660 [268 Pac. 1083].) ·

■ "To warrant a recovery under the Public Liability Act (Stats. 1923, p. 675), the following conditions must exist: '(1) The injury to the plaintiff must have resulted from a dangerous or defective condition of a public highway, street, . . . ; (2) the city council or other governing board or some officer or person having authority to remedy the condition must have had notice or knowledge thereof; (3) it, or he, must have failed or neglected to remedy the dangerous or defective condition within a reasonable time after acquiring knowledge or receiving notice; or (4) must have failed to take such action as might be reasonably necessary to protect the public against the dangerous or defective condition within a reasonable time after knowledge or notice.' (9 Cal. Jur. Supp. 627, citing *Bosqui* v. *City of San Bernardino,* 2 Cal. (2d) 747, 759 [43 Pac. (2d) 547]; *Nicholson* v. *City of Los Angeles,* 5 Cal. (2d) 361 [54 Pac. (2d) 725].) The theory of the act seems to be that liability is imposed not alone for the dangerous condition, but for the failure to remedy it, upon knowledge or notice thereof. (*Watson* v. *City of Alameda,* 219 Cal. 331 [26 Pac. (2d) 286].) Whether or not the requisite conditions are present should usually be determined from the facts of the particular case; the factors which contribute to produce a result are so varying that no hard and fast rule may find practical application to the great majority of cases. (*Waldorf* v. *City of Alhambra,* 6 Cal. App. (2d) 522 [45 Pac. (2d) 207].)

■ "In connection with its first point, appellant urges that 'the case at bar is analogous in principle to the physical conditions that prevail as described by the court in the cases of *Waldorf* v. *City of Alhambra,* 6 Cal. App. (2d) 522 [45 Pac. (2d) 207]; *Robertson* v. *City of Long Beach,* 19 Cal. App. (2d) 676 [66 Pac. (2d) 167]. These two cases are analyzed

by the Supreme Court in the recent decision in the case of
*George* v. *City of Los Angeles,* 11 Cal. (2d) 303 [79 Pac.
(2d) 723, 726], where it was said: 'In each of these cases
the injury was caused by a collision of an automobile with
a "jog" or "offset" in the street along which the auto-
mobile was being operated. It was held in the Waldorf case,
and followed in the other cited case, that there is no law of
this state which requires a municipality to maintain barriers
or warning devices at "jogs" or "offsets" in the streets
of a municipality; that in almost every city of size in the
state some streets are laid out and improved without uni-
formity as to width or direction, resulting in "jogs" or
"offsets" and that where there is nothing in the construction
of such a street to conceal its real condition, no liability
attaches to the municipality for injuries arising out of such
construction.

" 'The factual situation in each of these two cases differs
materially from that existing in the present action. ▆ It
is well settled in this state that when dealing with cases
falling under the provisions of the Public Liability Act of
1923, each of such cases must depend upon its own state of
facts and that no hard and fast rule can be applied in the
great majority of cases. (*Rafferty* v. *City of Marysville,*
207 Cal. 657, at page 660 [280 Pac. 118, 119]; *Waldorf* v.
*City of Alhambra,* 6 Cal. App. (2d) 522, at page 526 [45
Pac. (2d) 207]; *Hook* v. *City of Sacramento,* 118 Cal. App.
547 [5 Pac. (2d) 643].) In each of the Waldorf and Robert-
son cases, as we have seen, the claimed dangerous condition
was a "jog" or "offset" in the street at its intersection
with a cross-street, where the abutting property extended
beyond the property line on the opposite side of the cross-
street. The abutting property was surrounded by a curb
some six inches in height, and there was also a sidewalk
and parkway within the curb line. These, the court held,
constituted barriers or warnings sufficient to avert disaster
and readily visible to the driver of an approaching automo-
bile. . . . By reason of the marked difference in the factual
situation in the present case from those shown to have ex-
isted in the case of *Waldorf* v. *City of Alhambra,* and *Robert-
son* v. *City of Long Beach, supra,* we are unable to agree
with the respondent city that the decisions in those cases
are determinative of the issues involved in the instant case.
As the complaint in this case set forth facts showing the
existence of a dangerous and defective condition in Alle-

sandro street, together with notice of such condition by the officers of the city and their failure to remedy such condition, it met all requirements of the statute, and was not vulnerable to a general demurrer. The court, therefore, erred in sustaining said demurrer.'

''The intersection of Glenoaks boulevard and Providencia avenue reveals a much more complicated situation than a mere 'jog' or 'offset' in the street. Admittedly, there is a jog in Glenoaks boulevard, but added to that is the unpaved railway right of way commencing at the easterly side of the intersection, as well as the fact that the northerly curb of the paved portion of Glenoaks lying southerly of and adjoining the unpaved right of way came to an abrupt stop presenting at a point within the intersection a face eight by eight inches which any driver, even though using ordinary care, might easily overlook because of its inconspicuous aspect to one approaching the intersection from the west. There is evidence in the record that the driver turned abruptly to the right to avoid hitting the tall pole on the railway right of way and in so doing he struck the unprotected and inconspicuous end of the curb and thereby lost control of his car. There is no 'jog' or 'offset' in the car track at this point; continuing from the west, it traverses the intersection and then passes in a straight line over the unpaved right of way to the east of the intersection. There is also evidence in the record that at the time of the accident there was no visible warning to the driver of a machine traveling easterly into the intersection, 'straddling' the car track, that he could not continue to drive his automobile along the car track and upon the right of way, but that he must turn either to right or left to avoid disaster. Because of the lack of visibility at the time of day when the accident occurred, the small projecting end of the curb would appear to one approaching from the west to be a part of the unpaved right of way.

''Minutes of the city council of Burbank introduced in evidence disclose that on February 20, 1934, Howard I. Stites, city manager and city engineer in charge of repair and maintenance of streets and highways, knew and recognized the hazard to traffic which existed at this intersection and had then reported 'that deeds for right of way are being secured to widen the roadway there and lessen the traffic hazard at that corner'. Called as a witness Mr. Stites was asked if 'on February 20, 1934, when you appeared before

the council as the city manager and as the city engineer and discussed the obtaining of an easement over the right of way of the Pacific Electric Railway Corporation, it was for the purpose of widening or setting back those curb lines, was it not?' He replied: 'It was.' In September, 1934, appellant acquired an easement over two triangular strips of land embraced within the railway right of way and lying along the northerly and southerly sides of said right of way at its junction with the easterly line of the intersection. Mr. Stites testified that this deed was secured from the railway company for the purpose of widening the street, doing away with the bottleneck condition and setting back the curbs. The minutes of October 23, 1934, reveal that the traffic hazard which then existed at this intersection would be removed upon completion of the contemplated improvement. However, the matter was allowed to rest and nothing was ever done to warn the motoring public that a dangerous condition existed at this corner. It was a year after the deed had been secured that the accident which is the basis of this action occurred. Having been fully cognizant of the hazard there existing, it was the legal duty of the appellant to take proper steps to eliminate such hazardous condition. Its failure 'to take such action as may be reasonably necessary to protect the public against such dangerous and defective condition' (Stats. 1923, p. 675), constituted negligence as contemplated by said Public Liability Act.

"The contributory negligence of the driver of the car involved herein was pleaded as a defense by appellant. The jury having found to the contrary, it is beyond the power of this court to interfere, taking into consideration all of the facts and circumstances disclosed by the record. 'It is only where the inference of negligence is irresistible that it becomes the duty of the court to decide upon it as a matter of law, and, where the facts or the inferences to be drawn from them are in any degree doubtful, the only proper rule is to submit the whole matter to the jury under proper instructions.' (*Van Praag* v. *Gale*, 107 Cal. 438 [40 Pac. 555].)

"With respect to appellant's third point: In both *Bennett* v. *Kings County*, 124 Cal. App. 147 [12 Pac. (2d) 47], and *Edwards* v. *San Diego*, 126 Cal. App. 1 [14 Pac. (2d) 119], which were actions brought under the provisions

of the Public Liability Act, damages for wrongful death were allowed. In the Bennett case, referring to said act, the court at page 150 said: 'The first point raised is that the demurrer to the complaint should have been sustained. It is contended that the statute upon which this action is based (Stats. 1923, p. 675, sec. 2) is in derogation of the common law and must be strictly construed, and that since it does not specifically give a right of action to the heirs of a deceased person, such an action cannot be maintained. It is argued that those cases where such an action has been permitted or which have been treated as if such right existed, are not in point, since this particular question was not therein raised (see *Gorman* v. *County of Sacramento,* 92 Cal. App. 656 [268 Pac. 1083]; *Brooks* v. *City of Monterey,* 106 Cal. App. 649 [290 Pac. 540].) A part of the act in question reads: ''Counties . . . shall be liable for injuries to persons and property, resulting from the dangerous or defective condition of public streets, highways . . . ''

'' 'Aside from the consideration of any other statutes, we are unable to see why the ''injuries to persons'', referred to in this statute, do not include such injuries as may be caused to persons by reason of the death of others as well as injuries to persons directly involved not resulting in death. We think the injury suffered by these plaintiffs is covered by the statute and that the demurrer was properly overruled.'

■ ''As to appellant's complaint that the damages awarded for the wrongful death are excessive, the amount of damages in this kind of an action is committed first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine anew the facts and set aside the verdict if it is not just. 'Upon appeal, the decision of the trial court and the jury on the subject cannot be set aside unless the verdict is so plainly and outrageously excessive as to suggest at first blush passion, prejudice or corruption on the part of the jury.' '' (*Gorman* v. *County of Sacramento,* 92 Cal. App. 656, 667 [268 Pac. 1083], and cases there cited.) There is nothing in the record presented here which even suggests passion, prejudice or corruption on the part of the jury.

■ ''Appellant in its supplemental opening brief claims error by the trial court in giving three certain instructions

to the jury on the question of general negligence. In its closing brief, appellant admits that some of these individual instructions were proposed by it, and then calls attention to a fourth instruction which it also proposed but which it now claims was erroneously modified by the trial court. Taken as a whole, the instructions which were given fully and fairly presented the issues to the jury, and if any such error existed, it was so slight as to be entirely harmless and resulted in no prejudice to appellant's cause.

"From what has heretofore been said, it is apparent that there is not merit in appellant's fifth point. The third amended complaint was sufficient as against a general demurrer, and there was no error on the part of the trial court in denying appellant's motion for nonsuit and for directed verdict.

"The verdict is amply supported by both the law and the evidence."

The judgment is affirmed; the appeal from the order denying motion for a new trial is dismissed.

Seawell, J., Waste, C. J., and Langdon, J., concurred.

EDMONDS, J., Dissenting.—In my opinion the facts of the present case are not essentially different from those which were shown in the cases of *Waldorf* v. *City of Alhambra*, 6 Cal. App. (2d) 522 [45 Pac. (2d) 207], and *Robertson* v. *City of Long Beach*, 19 Cal. App. (2d) 676 [66 Pac. (2d) 167]. In each of those cases the appeal challenged a determination of the trial court that the plaintiff's complaint failed to state a cause of action. The facts alleged in each complaint were substantially the same. An accident had occurred at night when an automobile collided with and overran a curb on the far side of an intersection at which point there was a "jog" or "offset" in the course of the street. It was held in each case that the facts alleged were not sufficient to state a cause of action against the defendant city under the Public Liability Act. (Stats. 1923, chap. 328, p. 675; Deering's Gen. Laws, Act 5619, p. 3052.) The reasoning of the court in the Waldorf case, which was quoted and relied upon in the Robertson case, is as follows: "Nor do we think that the city is chargeable with liability in failing to maintain barriers, lights or warning signs or notices at the point of 'offset' or 'jog' in the street. In al-

most every city of size in this state some streets are laid out and improved without uniformity as to width or direction, resulting in so-called 'jogs', 'offsets' or 'goose-necks', some ending at cross-streets and some even forming cul-de-sacs. We are convinced that the law does not require a municipality to maintain either barriers or warning devices at 'jogs' or 'offsets' of the construction, nature and appearance of that described in the complaint herein. To the prudent operator of a motor vehicle, acting within the scope of the law governing his own conduct in traversing a public street in the night-time, the pavement, curb, sidewalk and the parkway with the trees or poles therein constitute a barrier or warning sufficient to avert disaster and as readily visible to the alert driver as a sign informing him of the condition, there being nothing to conceal the real condition nor to deceive the operator of an approaching automobile while driving at a lawful rate of speed and with due caution.'' (6 Cal. App. (2d), pp. 526, 527 [45 Pac. (2d) 207, 209].)

The physical facts in the present case come within this description of an ordinary street in any city. At the time the accident occurred, the course of Glenoaks Boulevard jogged to the right (instead of to the left as in the Waldorf and Robertson cases) at its intersection with Providencia Avenue, and beyond the intersection it is divided by the Pacific Electric's unpaved right of way. The commencement of the right of way on the far side of Providencia Avenue was made plainly apparent by numerous poles and posts and by the dark surface which continued beyond the white concrete pavement. One large pole (16″x16″) which stood on the right of way beyond the end of the pavement and almost directly in the path of the automobile which Urban Goebel was driving, had been painted with aluminum paint and appeared ''drab or dull gray.'' On this pole was suspended a railway crossing wig-wag signal facing Providencia Avenue. Directly opposite, three posts marked the line between the pavement and right of way on the north side of the railroad track. One of these posts was painted white. Approximately in the center of the intersection and 25 feet above the street, a 600 candlepower street light was suspended. On the northwest corner of the intersection was

a service station illuminated by lights totaling 1100 candle-power.

The four occupants of the car were riding in the front seat. The night was clear and the street was dry. Each of the two survivors of the accident lived two and one-half blocks from the scene and were well aware of the jog in the street. The driver of the automobile, who was killed, lived approximately a mile from the scene of the accident. In crossing the intersection the automobile swerved to the right, striking the end of a curb which formed the southern boundary of the right of way, and then, out of control, continued 232 feet, where it collided with a pole on the sidewalk.

The opinion of my associates distinguishes the two previous decisions upon the ground that "the curb referred to in the present action was not across the course which the automobile was traveling as it was in each of the two cases cited by appellant, but was parallel to said course and only a surface of some eight inches square was visible to the driver." It is also said that "there was no curb, sidewalk, or parkway, or other barrier to warn him [the driver] of the changed condition in the highway". This distinction overlooks the existence of physical conditions which constituted just as visible a warning to the oncoming motorist as did the "curb, sidewalk, and parkway" in the Waldorf case or the curb, sidewalk and empty lot in the Robertson case. Certainly a group of posts and poles, some of which were painted a light color, at an intersection illuminated by a powerful street light, are as plainly visible as a concrete curb and sidewalk of approximately the same color as the street pavement.

The opinion of the District Court of Appeal which is now adopted by this court, suggests that the west end of the curb which marked the southern boundary of the right of way might be easily overlooked by a motorist approaching from the west. But this curb, although small in itself, was a part of the physical conditions which were made apparent by other objects plainly indicating that the street did not continue beyond them. There was, therefore, no dangerous or defective condition of streets within the meaning of the statute upon which the plaintiffs rely and, as I read the record, the defendant's motion for a directed verdict should have been granted by the trial judge.

For these reasons. according to my view of the case, the judgment should be reversed with directions to the trial court to enter judgment for the defendant.

Houser, J., and Shenk, J., concurred.

Rehearing denied. Edmonds, J., Shenk, J., and Houser, J., voted for a rehearing.