WILLIAM T. PERKINS, administrator, *vs.* INHABITANTS OF OXFORD.

Oxford, 1876.—February 25, 1877.

*Way—defective. Town. Trial.*

The statute of 1874, c. 215, does not require the administrator of a person instantly killed, by reason of a defect in a highway or bridge, to give the notice to the selectmen of the delinquent town, which one injured in his

property or person is there required to give, within sixty days after the occurrence of the accident.

Acts of incorporation which make a fresh water and running stream the boundary of a town are to be construed in the same manner as deeds which make such a stream the boundary between conterminous proprietors; and the thread, not the bank, of the stream, is the boundary in the absence of language indicating a contrary intention.

It is proper for the presiding judge, in giving a requested instruction, to call the attention of the jury to the controverted question of fact upon their decision of which its applicability depends.

Towns are liable, severally, in the cases referred to in the statute, for damage caused by defects in ways and bridges which they are bound to maintain; and they cannot be relieved, either in whole or in part, from this liability, by the fact that they had united with another town in maintaining a bridge across a stream which constitutes the dividing line between them, though both towns are negligent, and the bridge is defective in the neighboring town, where the accident is caused by a defect on their own side of the line.

ON EXCEPTIONS.

CASE, for loss of life of Mrs. Hannah Blake, the plaintiff's intestate, May 14, 1874, through a defective bridge, while she, with her husband, who was then living, but has since deceased, was removing from Oxford to Hebron.

The defective bridge was across the inlet of Matthews' pond, a small stream dividing Hebron and Oxford. The evidence showed that four stringers spanned the stream, resting upon stone abutments, fourteen feet apart at the base, and somewhat more at the top; that the planking of the bridge was twenty-four feet long and fourteen feet wide; that while Mrs. Blake was riding on her goods loaded in a hay-rack, drawn by four oxen, the up river stringer broke, and she was precipitated into the stream, and killed.

The defendants introduced evidence, tending to show that the load as it passed on to the bridge was driven so near the upper edge that the near wheel struck the plank directly over the upper stringer, and that the cart passed on to near the center of the bridge, when the stringer and ends of the plank on the upper side of the bridge broke under the near wheel, and let it down.

The plaintiff introduced evidence tending to show that the breaking occurred as soon as the cart passed from the abutment on the Oxford side; that the outside stringer on the upper end of the bridge was more or less decayed and unsound; that in conse-

quence of said decay and unsoundness, the end resting on the Oxford abutment, fell to the bottom of the stream, and the other end resting on the Hebron abutment fell therefrom about two feet; that when Mrs. Blake fell from the top of the load, a portion of the goods, including a stove, fell on to her, and that when she was taken out, she was dead.

The defendants introduced evidence tending to show that the Oxford abutment was built some five or six feet into the stream measuring at high water mark, and the Hebron abutment, but one or two feet; that the place where the wheel broke through the planks, was from four to six feet on the Hebron side of the center line of the stream.

And the plaintiff introduced rebutting evidence.

The defendants introduced the "act to incorporate the town of Oxford, approved February 29, 1829, the first section of which reads as follows:"

"Be it enacted by the senate and house of representatives in legislature assembled, that so much of the town of Hebron, in the county of Oxford, as lies south-west of Matthews' pond, so called, and the inlet of said pond, running from Paris, and the outlet of said pond, running into Minot, be, and hereby is incorporated into a town by the name of Oxford," &c., &c.

The counsel for the defendants requested the presiding justice to instruct the jury:

I. That unless the plaintiff gave notice to the selectmen of the defendant town, setting forth the plaintiff's claim for damages, and specifying the nature of the injuries received, before the commencement of this action, it cannot be maintained.

II. That as a matter of law, the south-westerly bank of the inlet of Matthews' pond, at high water mark, is the dividing line between the towns of Hebron and Oxford, and if they find the defect which caused the accident, on the Hebron side of this line, the plaintiff cannot recover.

III. That if they find the place where the cart broke through the plank on the bridge, was within the limits of the town of Hebron, they must find for the defendants.

IV. That if they find the bridge described in the plaintiff's

writ, part in the town of Oxford, and part in the town of Hebron, and that the same had been supported and kept in repair, by said towns in common and undivided, that a stringer under the bridge, extending from one abutment to the other, was so rotten and decayed that each end fell from the abutments upon which it rested, an action for damages against the defendant town alone, for injuries to which the defective stringer contributed, cannot be maintained, and their verdict must be for the defendants.

V. That if the inhabitants of the defendant town, through its officers or agents, have for more than twenty years made repairs on highways, roads or bridges, outside of its corporate limits, such labor or repairs do not operate to change town lines or boundaries, or render them liable for damages caused by defects in such highways, roads or bridges.

The presiding justice declined to give the requested instructions in Nos. 1, 2, and 4, but gave No. 5, and No. 3, with this qualification : "If it was the breaking of the planks which caused the accident, and that breaking of the planks was within the limits of the town of Hebron, undoubtedly that result would follow ; for beyond the limits of the town of Oxford, or thread of the brook, the defendants are not responsible for the condition of the bridge ; so that the main and great question for you to pass upon, is, whereabouts was the defect which caused the catastrophe."

The verdict was for the plaintiff, for $700 ; and the defendants alleged exceptions.

*J. J. Perry*, for the defendants.

*H. C. Davis & A. Black*, for the plaintiff.

BARROWS, J.   Action upon the case to recover for the benefit of the estate which the plaintiff represents, the damages given by R. S., c. 18, § 65, in cases of loss of life.

The accident by which the plaintiff's intestate lost her life was the breaking down of a bridge over "the inlet of Matthews' pond," described in the exceptions as "a small stream dividing the towns of Hebron and Oxford."

It was in controversy before the jury, whether the disaster occurred by reason of the breaking of a rotten stringer, as soon as

the wheel of the cart in which the deceased was riding, left the abutment on the Oxford side of the stream, or by the breaking of planks on the Hebron side of the thread of the stream.

The first exception relied on by the defendants, is to the refusal of the presiding judge to rule that the action could not be maintained unless the plaintiff had given notice to the selectmen of the defendant town, setting forth his claim for damages, and specifying the nature of the injuries received, before the commencement of the action.

To support their claim to this notice, the defendants rely upon the provision in laws of 1874, c. 215, requiring the person who receives any bodily injury, or suffers any damage in his property through any defect or want of repair, &c., to give such notice within sixty days thereafter.

Obviously this requirement applies to another class of cases. It does not by its terms embrace such as the one before us, and could only be made to do so, by a forced, unnatural and unreasonable construction which we cannot adopt.

The second exception is based upon the idea that a different rule of construction obtains as to legislative acts defining the boundaries of towns from that which governs the construction of deeds and grants and makes a running stream the boundary between co-terminous proprietors ; and that the act, which makes so much of the town of Hebron as lies south-west of this stream and Matthews pond and its outlet to constitute the town of Oxford, makes the south-western bank instead of the thread of the stream, the boundary of Oxford. The idea is apparently a novel one to the inhabitants of Oxford, who seem from the fourth and fifth requested instructions to have acted on a different notion of their boundaries and duties. It was elicited, doubtless, by the exigencies of this case. Counsel seek to support it by the citation of sundry acts of incorporation where the legislature, *ex abundanti cautela,* have expressly made the centre of a stream the boundary between towns. We do not perceive that these affect the question, which is, what is the true construction, where the stream is made the boundary, and the special precaution to avoid controversy by precise and definite expressions is omitted ?

We see no good reason for adopting a different rule for the construction of acts of incorporation, in the matter of boundaries, from that which prevails as to the construction of deeds and grants, and which was laid down in this state, in *Morrison v. Keen*, 3 Maine, 474 ; and has often been reiterated and referred to as settled law. *Lincoln v. Wilder*, 29 Maine, 169. *Pike v. Monroe*, 36 Maine, 309. *Robinson v. White*, 42 Maine, 209.

It is obvious, that as town lines are frequently made lot lines in conveyances, much confusion and inconvenience would result from applying a different rule of construction to the instruments by which they are defined, and besides imposing unjust burdens upon some towns for the benefit of others, the titles of many private individuals would be disturbed.

Where the question has arisen, other courts seem to have held that acts of incorporation and deeds should be construed by the same rule in this particular. *Cold Spring, &c., v. Tolland*, 9 Cush. 492. *Ipswich, pet'rs*, 13 Pick. 431. *Knight v. Wilder*, 2 Cush. 199, 210. *State v. Gilmanton*, 9 N. H. 461. *Jones v. Soulard*, 24 How. (U. S.) 41. *Schools v. Risley*, 10 Wall. 91. *McCannon v. Sinclair*, 2 El. & El. 53. And in the somewhat analogous case, where a boundary of a parish is described in the statute creating it, thus : "with all the houses and grounds abutting on and upon the said road," the parish is held to extend to the middle of the road. *Queen v. Strand District*, 4 B. & S. 526. Construing the act of incorporation as we should construe a deed, the refusal to give the requested instruction was right. *Morrison v. Keen*, 3 Maine, 474. In what is called a qualification of the third request for instruction, the presiding judge merely called the attention of the jury to the controverted question of fact, upon their decision of which the applicability of the instruction depended. The instruction as given, was manifestly correct. Without the qualification, the instruction requested would have been obnoxious as an expression of opinion upon a question of fact, prohibited by laws of 1874, c. 212. There is no merit in the exception. There is no report of the instructions given, but it appears by the one to which the exception we have last considered was taken, that the jury were required to find that the defect

which caused the accident was on the Oxford side of the line, and that they were distinctly instructed that Oxford was not responsible for anything that happened by reason of the condition of the bridge on the Hebron side. This was undoubtedly correct; but it is not consistent with the fourth request, which proceeds upon the idea that if the town authorities of Oxford had seen fit to unite with those of Hebron in the maintenance of the bridge, and both had neglected their duty, and the Hebron side was defective as well as the Oxford side, the liability for an accident must of necessity be joint, and unless the injured party could maintain a joint action, he could maintain none at all. This is not so. Towns are severally responsible under the statute, for injuries suffered by reason of defects that are within their limits. The negligence of the Hebron town officers, if it produced any effect within the boundaries of Oxford, was the negligence of the Oxford officers also; and Oxford must answer for injuries caused by a defect on its own side of the line.

The liability is a statute liability, and the remedy which the statute furnishes must be pursued. The instruction requested was properly refused. *Exceptions overruled.*
*Judgment on the verdict.*

APPLETON, C. J., DICKERSON, DANFORTH, VIRGIN and LIBBEY, JJ., concurred.