OF THE

## STATE OF MISSOURI

AT THE

### OCTOBER TERM, 1914

*(Continued from Volume 261.)*

## GIANNOULA DIARIOTTI v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

In Banc, November 17, 1914.

1. **NEGLIGENCE: Recovery for Death: Law of Kansas: Liberally Construed.** Section 4871, General Statutes of Kansas 1901, providing for a recovery by the personal representatives for a wrongful killing, if the person killed might have maintained an action had he lived, is coeval with the State of Kansas, is remedial in character, and should receive a liberal interpretation.

2. ———: ———: ———: ———: **Notice.** Section 4871, General Statutes of Kansas 1901, provides that when the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter if the former might have maintained an action had he lived. Section 1, chap. 393, Laws of Kansas 1903, provides that a railroad operating in that State shall be liable to any employee for all damages done to him through the negligence of its agents, engineers or other employees, provided that notice in writing of the injury shall have been given "by or on behalf of the person injured" within 90 days after the accident. *Held,* that the words concerning notice in Sec. 1, chap. 393, do not apply to an action under

Diariotti v. Railroad.

Sec. 4871, because notice can be given neither by the dead nor in their behalf, and the provision does not include notice given in behalf of one entitled to damages for the death of another. [WOODSON, J., dissents.]

3. ———: ———: ———: **Suit by Widow of Alien.** Under the laws of Kansas (Sec. 4872, G. S. 1901), an alien next of kin can maintain an action for damages for the wrongful killing of another alien, and where a widow, resident in Greece, filed her suit in Missouri, where her husband died as a result of injuries received in Kansas, an allegation in her petition that her husband died in Missouri is sufficient to show her capacity to sue until defendant shall plead and prove that deceased left an estate to be administered in Kansas.

4. ———: ———: ———: **Question for Jury: Evidence: Reports to Defendant Introduced by Plaintiff.** Evidence in an action by a widow for damages for the death of her husband through the negligent managing of hand cars by defendant's employees *held* to justify a submission of the case to the jury despite the fact that, to show notice, plaintiff introduced reports of employees, made to the company in compliance with its rules, which tended to show due care on defendant's part and contributory negligence on that of deceased.

Appeal from Jackson Circuit Court.—*Hon. H. L. McCune*, Judge.

AFFIRMED AND REMANDED.

*Martin L. Clardy* and *Edw. J. White* for appellant; *Elijah Robinson* of counsel.

(1) The court erred in setting aside the verdict and judgment in this case in favor of the defendant and granting the plaintiff a new trial. The statute of Kansas, not vesting the cause of action absolutely in the widow, but the right to sue passing to the administrator or personal representatives of the deceased, the widow could not maintain the action, as the probate court, alone, would have jurisdiction to determine her property right and its jurisdiction in this regard was both original and exclusive. (2) The plaintiff's own evidence established that the accident through

which Diariotti was injured, was not caused by any
negligence of the defendant, or any of its employees,
but that the deceased himself was guilty of negligence,
directly contributing to his injury. The plaintiff put
in evidence the statements of Bill Curissi and Pietro
Darass and Bill Danasa. These statements showed
that the deceased was "standing on hand car, when he
become overbalanced and fell in front of the car. . . .
Injured man says, got out of balance. No one to
blame." And some of the witnesses for the plaintiff
testified that the fourth car ran against the third car
and knocked several men off, the deceased being one of
them, but their testimony was conflicting and unsatis-
factory and was diametrically opposed to the state-
ments introduced by the plaintiff and standing alone
was insufficient to support a verdict for the plaintiff.
Moore v. Railroad, 28 Mo. 622; Peck v. Railroad, 31
Mo. App. 123; Peffer v. Railroad, 98 Mo. App. 291;
Railroad Co. v. Shertle, 92 Pa. St. 450. Both Peter
Darass and Bill Corizis, in their statements, state that
the deceased was told three or four times to hold on to
the lever, which would have prevented his falling, but
he failed to do so. This was a part of plaintiff's evi-
dence and was uncontradicted. These statements con-
victed the deceased of contributory negligence, as a
matter of law, and since he could not have recovered for
the injury resulting therefrom, the plaintiff was also
not entitled to recover and the demurrer was properly
sustained. Van Bach v. Railroad, 171 Mo. 338; Tan-
ner v. Railroad, 161 Mo. 497; Huggard v. Railroad, 134
Mo. 497; Kelsey v. Railroad, 129 Mo. 362. (3) If the
death of the deceased could be connected at all with
the defendant's negligence, it was the negligence of its
"agents" and "employees" and under the statute of
Kansas, in force at the time of his injury and death,
it was a condition precedent to the plaintiff's right to
maintain this action; that "notice in writing of the in-
jury, stating the time and place thereof," should have

been given the railroad company," within ninety days after the occurrence of the accident and the failure to give this notice was a complete barrier to the plaintiff's right to maintain this cause of action. Mathieson v. Railroad, 219 Mo. 542.

*Conkling, Rea & Sparrow* for respondent.

BROWN, C.—The plaintiff is the widow of Peter K. Diariotti who was killed while engaged in the service of the defendant near Hope station in the State of Kansas, July 6, 1904. She commenced this suit in the circuit court for Jackson county, Missouri, at Kansas City, September 19, 1905, to recover damages sustained by reason of his death.

In her amended petition the plaintiff alleged that her husband was one of a number of laborers in defendant's employ working upon its track near the place where he was killed, and at the time of the accident was being carried by defendant on hand cars with other workmen to his place of work. That his death was the direct result of the negligence of the defendant and its foreman and assistant foreman in charge of the hand cars in placing upon the one upon which her husband was being carried, too many men; in failing to maintain a reasonably safe distance between them; in running the cars at an unreasonable rate of speed; in failing to stop the car immediately following in time to avoid a collision; and in failing to provide proper and sufficient rules for the operation of its hand cars under such circumstances, all of which were alleged in violation of its duty.

The plaintiff also pleaded as a foundation for her right to recover damages the following statutes from the General Statutes of Kansas of 1901:

"Section 4871. When the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an

action therefor against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission. The action must be commenced within two years. The damages cannot exceed ten thousand dollars, and must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased.

"Section 4872. That in all cases where the residence of the party whose death has been or hereafter shall be caused as set forth in section 422 of chapter 80, Laws of 1868, is or has been at the time of his death in any other state or territory, or when, being a resident of this State, no personal representative is or has been appointed, the action provided in said section 422 may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

The petition stated that plaintiff resided in Missouri at the time of his death, and that no personal representative had been appointed.

The defendant pleaded and put in evidence section 1 of chapter 393 of the Laws of Kansas of 1903, entitled "An act to define the liability of railroad companies in certain cases" which is as follows:

"Section 1. That section 1, chapter 93 of the Laws of 1874, entitled, 'An act to define the liability of railroad companies in certain cases,' approved February 26, 1874, be and the same is hereby amended so as to read as follows: Every railroad company organized or doing business in this State shall be liable for all damages done to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage; provided, that notice in writing of the injury so sustained, stating the time and place thereof, shall have been given by or on behalf of the person injured to such railroad com-

pany within ninety days after the occurrence of the accident.''

The evidence tended to show that the deceased was a Greek who came to this country in March, 1903, from his home in the little village of Lasteika in the province of Elis in that country, leaving his wife and four young children, the eldest eleven years old, in their former home, sending them money from his earnings for their support and declaring his intention to return to his home in four years.

Upon his arrival in this country he landed in New York City, went to Chicago, where he remained fifteen or twenty days; thence to St. Louis where he remained a month, working in a factory, and from there he went to Sycamore, Kansas, where he entered the service of the defendant railroad company, by which he was moved from place to place in the course of his employment, and at the time of his death he was working on defendant's railroad near Hope, Kansas, where he lived in a boarding car. The accident happened while defendant was taking the gang with which he was employed to their place of work near Hope. There were between thirty and forty in the gang who were being moved on four hand cars in charge of a foreman and his assistant. The deceased was riding on the third car, standing on the front end with his back to the front, pumping the car in the usual manner. The evidence tended to show that the fourth car hit the third one upon which the deceased was riding, knocking him off it, and the car then ran against him, breaking three of his dorsal vertebrae. He was sent to the defendant's hospital in St. Louis, where he died from the injury in about three weeks.

Under a rule of defendant three reports were made out for its information by employees present at the accident. These reports were produced on the trial. The court directed a verdict for the defendant, stating at the time that it was upon the ground that no notice had

been given by or on behalf of the deceased within ninety days after the occurrence of the accident as provided by section 1, chapter 393 of the Laws of Kansas 1903, already quoted. The motion for a new trial stated among others the following grounds:

"4. Because the court erred in holding that the provisions of the Act of the State of Kansas of March 4, 1903 (Laws of Kansas 1903, p. 599), were applicable to this case.

"5. Because the court erred in holding that the written notices of the injury, as made by defendant's laborers, were not a substantial compliance with the said act of the State of Kansas."

From the order of the court sustaining this motion, the defendant has taken this appeal.

I. This suit is founded upon section 422 of the Civil Code of Kansas, which provides that "when the death of one is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action had he lived against the latter for an injury for the same act or omission." This section is coeval with Kansas, having been enacted by its first Legislature, in 1859; so that in that commonwealth the right of action for wrongful death has, as was said by its Supreme Court in Atchison, Topeka & Santa Fe Railway Co. v. Fajardo, 74 Kan. 314, "been as available as any of the common-law remedies." It is, as is said in the same case, "remedial in character, and should receive a liberal interpretation with a view of extending the remedy to those who have suffered damages from the death of a relative which was caused by the wrongful act of another." It was founded in the just and simple notion that if it be right to compensate the disabled man in damages for what he might

*Negligence: Recovery for Death: Laws of Kansas: Liberally Construed.*

otherwise earn for the comfort and happiness of those whom the law of nature as well as the law of the land has committed to his keeping, it must also be right, in case of the more monstrous wrong of his death, that that portion of the compensation should pass directly to those upon whom the loss has fallen.

In 1874 Kansas, by its railway fellow-servant law, placed all railway employees in a class by themselves with respect to compensation from their employers for wrongful injuries, by including those cases in which the common-law right to such compensation had always existed with those in which the new right was given to be compensated for injuries suffered from the negligence of fellow servants, in one section of the statute, as follows:

"Every railroad company organized or doing business in the State of Kansas shall be liable for all damage to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees to any person sustaining such damage."

These two provisions went hand in hand for twenty-nine years, when the following words were added to the one last quoted: "provided, that notice in writing of the injury so sustained, stating the time and place thereof, shall have been given by or on behalf of the person injured to such railroad company within ninety days after the occurrence of the accident." [Laws 1903, sec. 1, chap. 93.] This law was in force at the time this injury was suffered, and the question as stated by the trial court was whether it is applicable to this suit for killing the deceased. Its words do not apply because notice can neither be given by the dead nor in their behalf, and they do not include notice given on behalf of one entitled to damages for the death of another. The death statute under which this suit is brought provides that the right to maintain it shall exist if the deceased

*Notice.*

might have maintained an action had he lived . . . for *an* injury for the same act or omission. It is the death by the act or omission that gives the cause of action direct to the plaintiff under the statute, and the fact that the deceased, had he lived, might have maintained an action for an injury resulting from the same wrong, which determines the right to recover. There is nothing in the amendment of 1903 which indicates a purpose to apply it to suits for damages resulting from death and no reason why its construction should be strained for that purpose.

II. The statute provided that in all cases where the residence of the deceased was, at the time of his death, in any other State or Territory, or when being a resident of this State no personal representative is or has been appointed, the action may be brought by the widow. In this case the residence of the deceased was in Greece, where his family still remained at the time of his death. There is no evidence in the record that he ever acquired a residence in Kansas. He died in Missouri, which was also the home of the defendant corporation as admitted by the pleadings.

Suit by Alien Widow.

That an alien next of kin might bring this action for the death of an alien was held by the Kansas Supreme Court in Railroad v. Fajardo, supra. In that case the court says: "Residence in another State or territory means a residence outside of Kansas." The statute of Kansas (G. S. 1905, sec. 2875) provided that "when any person shall die intestate in any other State or country leaving any estate to be administered within this State, administration thereof shall be granted by the probate court of any county in which there is any estate to be administered." The Supreme Court of that State holds that this provision contemplates that "when a person dies intestate in any other State or country than Kansas, in order to authorize the

Diariotti v. Railroad.

granting of letters testamentary or letters of adminis-
tration the deceased must have left an estate to be ad-
ministered within this State, and that estate must be
something of a tangible nature to pay the costs and
expenses of administration and the debts of the intes-
tate, if any exist. The money recovered by the admin-
istrator in an action given by section 422 cannot be
used for the costs and expenses of administration, or
to satisfy the debts of the creditors of the deceased;
and an action based upon this statute is not an 'estate'
or 'assets' within the act respecting executors and ad-
ministrators." [Perry v. Railroad, 29 Kan. 420, 423.]

The statement in the petition that the deceased
died in Missouri is sufficient to show the capacity of
the widow to bring the suit until defendant shall plead
and prove that he left an estate to be administered in
Kansas.

III. The defendant insists that there was no evi-
dence to justify the submission of the case to the jury.
We have carefully read the testimony
and while the plaintiff's evidence was
somewhat conflicting we think it
tends to prove negligence in the management of the
hand cars directly contributing to the injury, and that
the question of contributory negligence was for the
jury to determine. The argument of defendant's coun-
sel on this branch of the case is founded largely upon
the theory that the plaintiff, having introduced the re-
ports of the accident made to plaintiff by its employees
under its rules, for the purpose of showing notice to
the defendant, is bound by the statements of fact con-
tained in them. We do not think that is the law, and
the defendant has not directed our attention to any au-
thority in support of his position. The statements
prove that the men who made them reported to the de-
fendant that they were true and nothing more.

Evidence: Question
for Jury.

We accordingly affirm the judgment of the circuit court granting a new trial and remand the case for further proceedings.

PER CURIAM.—This cause coming into Banc, the divisional opinion of BROWN, C., is adopted as the opinion of the court. *Lamm, C. J., Brown, Bond, Walker* and *Faris, JJ.*, concur; *Woodson, J.*, dissents in an opinion filed; *Graves, J., dubitante.*

## DISSENTING OPINION.

WOODSON, J.—By reading the statement in this case, and the law applied thereto, it will be seen that our learned Commissioner has overlooked the case of Mathieson v. Railroad, 219 Mo. 542, l. c. 546, construing the act of the Legislature of Kansas which went into effect March 4, 1903, which reads as follows:

"Every railroad company organized or doing business in this State shall be liable for all damages done to any employee of said company in consequence of any negligence of its agents, or by any mismanagement of its engineers or other employees, to any person sustaining such damage; provided, that notice in writing of the injury so sustained, stating the time and place thereof, shall have been given by *or on behalf of the person injured* to such railroad company within ninety days after the occurrence of the accident." (The italics are ours.)

In that case this court, after reviewing the authorities, unanimously held that the notice mentioned therein was a substantive element in the plaintiff's case, and that a petition based upon the laws of Kansas, omitting an allegation regarding the giving of said notice, failed to state facts sufficient to constitute a cause of action.

In a passing phrase, Mr. Commissioner BROWN, without considering the statute in any sense whatever,

brushes it aside as so much chaff by the following words: "Its words do not apply because notice can neither be given by the dead nor in their behalf, and they do not include notice given on behalf of one entitled to damages for the death of another."

If a solemn enactment of a Legislature, plain, simple and unambiguous as this statute is, can be brushed aside without thought or consideration, and with so little ink, then I would suggest that Legislatures be abolished, and that the law making and repealing power of government be placed in the hands of the judiciary, and thereby avoid the expense and necessity of going through the useless forms of legislation.

The statute in plain words says the injured party shall give the notice, or some one else shall give it for him. The mere fact that he dies of his injuries does not take the case out of either the spirit or letter of the statute, any more than if he should have been so badly injured that he could not have been physically able to give the notice. For that reason the italicized words of the statute were evidently added in order that death or physical inability would not destroy the cause of action, which the general terms of the statute would otherwise have done, had not said proviso been added authorizing others to give it for him.

Without the notice the plaintiff had no cause of action during life; and if he died without giving the notice, or some one for him, then he had no cause of action to survive to the plaintiffs, those referred to in the other statutes mentioned in the opinion of our learned Commissioner.

The simplicity of the facts of this case, and the statutes applicable thereto, causes one to marvel why sensible men can misunderstand them, except upon the theory that we are convinced of the fact that the legislature of a State is incompetent to enact laws for the government of its · people, and therefore the courts must for righteousness' sake set aside or nullify them.