[L. A. No. 22092. In Bank. Oct. 24, 1952.]

AILEEN MARY WARD et al., Appellants, v. A. B. JONES
et al., Respondents.

Richard L. Mayers and Lawrence William Steinberg for Appellants.

Ray L. Chesebro, City Attorney (Los Angeles), Gilmore Tillman, Chief Assistant City Attorney, Wendell Mackay and A. L. Lawson, Deputy City Attorneys, for Respondents.

SHENK, J.—This is an action for damages for wrongful death as authorized by section 377 of the Code of Civil Procedure. That section provides that "when the death of a person . . . is caused by the wrongful act or neglect of another, his heirs . . . may maintain an action for damages against the person causing the death . . ."

The plaintiffs are the widow and minor children of Joseph T. Ward, deceased. The complaint, later amended, was filed on March 29, 1949. The appeal is from a judgment of dismissal of the action following an order sustaining a general demurrer without leave to amend.

The decedent was a painter employed in the Department of Water and Power of the City of Los Angeles. On July 12, 1948, he was a member of a crew of department employees then engaged in painting an electrical transmission line tower. This tower supported high tension wires carrying an electrical potential of approximately 130,000 volts. While Ward and his fellow employees were engaged in the discharge of their departmental duties he was injured by coming in contact with a high tension wire and died two days later. The liability of the employer city was prescribed and limited by the death benefit provisions of workmen's compensation laws of the state, and the city is therefore not a party defendant in this action. The defendants were fellow employees of the decedent.

The complaint alleges that it was extremely hazardous for any painter to work on the transmission line towers when the wires were energized; that reasonable care required: that the current be turned off while painters worked on the towers; that neither painters, planks, scaffolding nor rigging, except of the nonconducting quality, be permitted to come within 10 feet of the energized wires; that competent electrical mechanics be stationed at all times between the wires and painters working on the towers, and that painters be required to wear safety belts while so working.

It is also alleged that none of the foregoing precautions had been taken for a long period of time prior to the accident which caused Ward's death; that each of the defendants was aware of this fact, but in neglect and disregard of his duties as an employee of the department "carelessly and negligently" failed to take any steps to remedy the situation.

The complaint then alleges that the electrical mechanic assigned to the job insisted that certain precautions be provided to protect the painters from the dangers of the high tension wires but that the defendant O'Connor "in wilful, negligent and reckless" disregard of the safety of members of said crew, adopted the practice of working and did cause his painting crew to work in dangerous proximity to the high tension wires, without the protection of competent electrical

mechanics; that on the day of the fatal accident the deceased was a member of the painting crew that was "negligently directed by the defendants" Williams and Phillips to paint the tower which was in dangerous proximity to the high tension wires.

A verified claim for damages stating the necessary information was filed with the city clerk on October 8, 1948, by the plaintiff widow. The complaint does not allege that any claim for damages was presented to or served upon the defendants or any of them, and they received no actual notice that an action would be brought against them prior to the service of the complaint in this action.

Section 1981 of the Government Code provides: "Whenever it is claimed that any person has been injured or any property damaged as the result of the negligence or carelessness of any public officer or employee occurring during the course of his service or employment . . . within 90 days after the accident has occurred a verified claim for damages shall be presented in writing and filed with the officer or employee and the clerk or secretary of the legislative body of the . . . municipality . . ."

It is the contention of the plaintiffs that section 1981 does not apply to actions for wrongful death. It may not be denied that if that section does apply to wrongful death cases a verified claim must be presented to an employee sought to be charged within 90 days after the accident. In *Veriddo* v. *Renaud*, 35 Cal.2d 263, it was said, at page 265 [217 P.2d 647], that by section 1981 the Legislature "has extended to public officers and employees, who incur liability in the performance of government service, the protection of a claims statute and the privilege of having defended at public expense those damage suits which are enumerated" in the code. This court cited with approval the case of *Huffaker* v. *Decker*, 77 Cal.App.2d 383 [175 P.2d 254], in which the defendant city employee was sued for damages allegedly caused by the negligent driving of an automobile owned by the city and driven within the scope of the defendant's employment. It was held that the failure of the plaintiff to allege compliance with the claim provisions of section 1981 was fatal to his cause of action.

The plaintiffs contend that the section contemplates only a claim on behalf of the person injured; that an heir under the death statute can in no sense be deemed to be the person

injured; that this concept is fortified by the use of the words "after the accident has occurred," and that thus the time of death as the time of the accident is excluded.

██ In an analogous situation this court has held that an heir of the deceased is a person injured within the terms of the death statute. In *Arellano* v. *City of Burbank,* 13 Cal. 2d 248 [89 P.2d 113], the liability of the municipality in a wrongful death case pursuant to the Public Liability Act of 1923 (Stats. 1923, p. 675; Gov. Code, § 53051), was sustained. Section 2 of the act there under consideration provided that in certain cases municipalities should be liable for "injuries" to persons and property resulting from dangerous or defective condition of public streets. In holding that the statute authorized the city's liability for wrongful death this court at page 258 cited and quoted with approval from *Bennett* v. *Kings County,* 124 Cal.App. 147, where it was said at page 150 [12 P.2d 47]: "Aside from the consideration of any other statutes, we are unable to see why the 'injuries to persons', referred to in this statute, do not include such injuries as may be caused to persons by reason of the death of others as well as injuries to persons directly involved not resulting in death. We think the injury suffered by these plaintiffs is covered by the statute and that the demurrer was properly overruled."

A different intent should not be attributed to the use of the same language in another section. An intent to include liability for injuries to persons and property flowing from wrongful death is read from the language in the section imposing liability. An intent to exclude the obligation to file a claim due to such injuries may not therefore be read from the similar language in section 1981 of the Government Code. As used in that section the language likewise is plain and sufficiently similar to warrant the conclusion that the Legislature intended it to have the same meaning in each section. That language, referring to injuries to person and property, must be deemed to be all inclusive in both sections.

The Arellano case was decided in 1939. That a sufficient claim is required in cases of wrongful death has been thereafter assumed. (See *Cooper* v. *County of Butte,* 17 Cal.App. 2d 43 [61 P.2d 516]; *Huey* v. *City of Los Angeles,* 137 Cal. App. 48 [29 P.2d 918]; *Beeson* v. *City of Los Angeles,* 115 Cal.App. 122 [300 P. 993].) With this construction placed upon the section the Legislature has not seen fit to change

the statutory requirements of presenting a claim in wrongful death cases.

It is contended by the plaintiff that section 1981 applies only in cases of alleged "negligence and carelessness," that this complaint alleges something more in that the word "wilful" appears in one allegation and thereby excludes the cause of action from the operation of the section. This contention may not prevail. As above indicated it is alleged that by failing to take proper precautions to protect the painting crew the defendants "in violation, neglect and disregard of their various duties and responsibilities as officers and employees of said Department of Water and Power, carelessly and negligently failed to take any steps to remedy the same"; that the deceased was a member of a painting crew that "was negligently" directed by the defendants to paint one of the towers. As to the defendant A. J. O'Connor alone it is alleged that "in wilful, negligent and reckless" disregard of the lives and limbs of his crew, he had followed the practice of working and did cause his painting crew to work in dangerous proximity to said high tension wires; and that O'Connor's "practice" was with the knowledge, consent, authority and direction of his codefendants. Taking into consideration the complaint as a whole, wherein the same acts are alleged to constitute negligence and carelessness on the part of all of the defendants, the pleading states a cause of action based on negligence within the meaning of section 1981 and would be sufficient as such as against the general demurrer, but for the intervention of the claims statute.

It is also urged that section 1981 is not applicable to this case because when death occurs as a result of the tortious act the time for presenting the claim is too uncertain. The section provides that the claim must be presented within 90 days after the "accident has occurred." It is argued that the "accident" is the occurrence causing the injury and that the injured party may die more than 90 days after the event causing the injury, thus making compliance with the time element impossible. It is unnecessary here to determine whether the word "accident" as found in the statute should be held to refer to the event that gave rise to the injury to the plaintiffs, namely, the death of the deceased, for the purpose of determining the commencement of the statutory period. Since the plaintiffs filed no claim at all against the defendants, a determination in that respect would not resolve any issue in this case.

It is concluded that the attempted cause of action against the defendants is based on negligence; that section 1981 is applicable; and that failure to comply therewith is fatal. Under these circumstances it does not appear that the complaint could be amended to state a cause of action.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

There can be no doubt that the various statutes imposing liability on government agencies include liability for wrongful death as well as injuries to persons and property and that they extend to cases where the injury is inflicted intentionally, wilfully, or through gross negligence as well as negligence. The claim statutes, however, do not cover the wrongful death actions. The subject is ably discussed by Mr. Presiding Justice White of the District Court of Appeal, Second District, Division One, in an opinion prepared by him when this case was before that court, which I adopt as my dissent, as follows:

"A general demurrer to their amended complaint (hereinafter referred to as the complaint) having been sustained without leave to amend, plaintiffs have appealed from the ensuing judgment of dismissal. The action is one for wrongful death brought by the widow and minor children of Joseph T. Ward. The decedent met his death by coming in contact with a high tension electric transmission line while engaged as a painter in painting a tower at an electrical substation of the Department of Water and Power of the City of Los Angeles. The decedent was an employee of the department and the defendants were fellow employees having varying degrees of supervision over or connection with the work of painting the tower. The complaint alleged, in substance, that it was extremely dangerous for a painter to work on the tower in the vicinity of the high-voltage wires, and that reasonable care required that the current be turned off while such work went on; that there be two competent electricians present at all times; that no painters, nor any equipment except of a nonconducting quality be permitted within 10 feet of the wires while they were energized; that safety belts be used. It was charged that the defendants, in violation, neglect and disregard of their duties as officers and employees

of the department, carelessly and negligently failed to take such precautions; further that defendants O'Connor and Williams, as foreman and assistant foreman of the painting crew, caused an electrical mechanic to be removed from the job in order to expedite the work by omitting the precautions insisted upon by the electrical mechanic and thereafter, 'in willful, negligent and reckless disregard of the lives and limbs of members of said crew, adopted the practice of working and did cause his painting crew to work in dangerous proximity to said high tension wires,' and 'to the knowledge and with the consent and authority and pursuant to the directions of' the other defendants.

"The demurrer was based upon the sole ground that the complaint failed to allege that the plaintiffs presented a verified claim to the defendants within 90 days from the date of the accident. The complaint in this connection contained the following allegation: 'That on October 8, 1948, plaintiff Aileen Mary Ward filed a written verified claim for damages with the City of Los Angeles, State of California, by filing same with Walter Peterson, City Clerk of said City; that said claim for damages specified the names and addresses of the claimants, the nature of the damages and injuries, when and where the injuries occurred, and a description of the manner and nature of the accident and injuries.'

"Section 1981 of the Government Code reads as follows:

" 'Whenever it is claimed that any person has been injured or any property damaged as a result of the negligence or carelessness of any public officer or employee occurring during the course of his service or employment or as a result of the dangerous or defective condition of any public property, alleged to be due to the negligence or carelessness of any officer or employee, within 90 days after the accident has occurred a verified claim for damages shall be presented in writing and filed with the officer or employee and the clerk or secretary of the legislative body of the school district, county, or municipality, as the case may be. In the case of a State officer the claim shall be filed with the officer and the Governor.'

"Appellants present three reasons why, they assert, the causes of action here involved do not come within the requirements of the aforesaid section 1981: 1. That an action for wrongful death is not included within the wording of the section, which refers only to situations where 'it is claimed that any person has been injured or any property damaged'; 2. That the section by its terms does not include cases involv-

ing wilful misconduct, appellants here contending that they have set forth a cause of action for wilful misconduct rather than mere negligence; and 3. That the statute should not be construed to include an action by an injured employee against a fellow employee.

"As a fourth ground of reversal, appellants assert that even though section 1981 should be held applicable in the instant action, their filing of a claim with the city clerk of the city of Los Angeles should be held to constitute substantial compliance.

"The majority view of the courts of other jurisdictions as reflected in cases we consider as exceptionally well reasoned, is that statutes containing language similar to that involved in the section here under consideration do not apply to an action for wrongful death. The language of the Supreme Court of Missouri in *Glasgow* v. *City of St. Joseph* (1944), 353 Mo. 740, 748 [184 S.W.2d 412, 416], is illustrative: 'Unless actions for death by wrongful act, are explicitly included, it is generally held that like statutory provisions do not apply to an action for wrongful death. This is especially so where, as in Missouri' (and as in California), 'the wrongful death action is considered a new cause of action, first springing into existence at the time of death.' (Citing 25 C.J.S., p. 1102, § 30, subsection a; 38 Am.Jur., p. 392, § 688; 6 McQuillin, Municipal Corporations, p. 1285, § 2890, n. 12; Annotation, 64 A.L.R. 1059.)

"The case of *Spangler's Administrator* v. *City of Middlesboro* (1945), 301 Ky. 237 [191 S.W.2d 414], involved a statute providing that 'No action shall be maintained against any city . . . unless notice . . . be filed within ninety days of the occurrence for which damage is claimed. . . .' The court there pointed out that where an injured party dies, the usual necessity for prompt examination to determine exact extent of injuries is obviated and the coroner's inquest provides the city with ample notice for the purpose of eliminating for the future the dangerous condition which caused the death. But further, as pointed out by the Kentucky court, the notice is required to be filed within 90 days of the 'occurrence' for which damages are claimed. The California statute uses the word 'accident.' Clearly, so far as an action for personal injuries is concerned, the words 'occurrence' and 'accident' mean the same thing—the incident or event causing the personal injuries, such as the incident of a collision of automobiles, the incident of falling into an excava-

tion, etc.) As stated in the last cited case, if it were held that notice were necessary to the maintenance of an action for wrongful death, the action would be barred where the 'injury'—that is the 'accident' or 'occurrence' occurred more than 90 days before death.

"The language of the Supreme Court of Vermont in *Bigelow* v. *Town of St. Johnsbury* (1918), 92 Vt. 423 [105 A. 34], is here appropriate: 'It is argued that . . . persons financially injured through the death of their next of kin must give notice the same as they would be required to give if they were themselves physically injured. The absurdity of such a construction is manifest from its logical result. If a person injured is, in consequence thereof, bereft of his reason, and the injuries result in his death 21 days after the occurrence of such injury, no action can be held or maintained, under the statute, for the benefit of the next of kin, because notice was not given within 20 days of the time of the injury, during all which time the injured person was yet alive. An absurd purpose is not to be attributed to the lawmakers, and a construction leading to an absurd consequence must always be avoided.'

"Another Vermont case illustrative of the difficulties that would be involved were the statute held applicable is *Eames* v. *Town of Brattleboro* (1882), 54 Vt. 471, where the person injured died within half an hour after the accident. Recovery was sought on behalf of two minor daughters, no claim or notice having been filed. The court said: 'We think there is no room for doubt that no notice was required in this case. The language is plain and the effect of it unmistakable. The "person injured", as used in the proviso, refers to the person injured in the accident, not to the person injured pecuniarily, as a result of the accident.'

"We will refer further to the meaning in section 1981 of the words 'whenever it is claimed that any person has been injured' in discussing respondents' contentions with respect to the applicability of the statute.

"Other cases holding typical claims statutes to be inapplicable to wrongful death actions, many involving statutes containing much broader language than that involved in the instant case, are *Diariotti* v. *Missouri Pac. Ry. Co.* (1914), 262 Mo. 1 [170 S.W. 865]; *Nesbit* v. *City of Topeka* (1912), 87 Kan. 394 [124 P. 166, 40 L.R.A. N.S. 749]; *Orth* v. *Belgrade* (1902), 87 Minn. 237 [91 N.W. 843]; *Senecal* v. *City of West St. Paul* (1910), 111 Minn. 253 [126 N.W. 826]; *Parish*

v. *Eden* (1885), 62 Wis. 272 [22 N.W. 399]; *McKeigue* v. *City of Janesville* (1887), 68 Wis. 50 [31 N.W. 298]; *Laconte* v. *City of Kenosha* (1912), 149 Wis. 343 [135 N.W. 843]; *Knight* v. *Town of Haverhill* (1915), 77 N.H. 487 [93 A. 663]; *Perkins* v. *Oxford* (1877), 66 Me. 545; *Prouty* v. *City of Chicago* (1911), 250 Ill. 222 [95 N.E. 147]; *Devine* v. *City of Chicago* (1911), 166 Ill.App. 17.

"Respondents urge that the language 'person . . . injured' includes injury resulting from the wrongful death of another, and that this view is supported by the interpretations, expressed or assumed, of similar language in related statutes, in decisions of the courts of this state. In this connection, it is said that the various statutes[1] on the subject of the liability of cities, public agencies, and their officers, and the filing of claims therefor, 'must all be read together and so construed, the liability of a city or its agents must be determined and the procedure therein set forth must be followed.' (*Yonker* v. *City of San Gabriel*, 23 Cal.App.2d 556 [73 P.2d 623]. See also *Shannon* v. *Fleishhacker*, 116 Cal.App. 258 [2 P.2d 835]; *Douglass* v. *City of Los Angeles*, 5 Cal.2d 123 [53 P.2d 353]; *Ansell* v. *City of San Diego*, 35 Cal.2d 76 [216 P.2d 455]; *Jackson* v. *City of Santa Monica*, 13 Cal.App.2d 376 [57 P.2d 226]; *Tyree* v. *City of Los Angeles*, 92 Cal.App.2d 182 [206 P.2d 912].)

"Section 53051 of the Government Code (formerly Stats. 1923, p. 675) provides that counties, municipalities and school districts 'shall be liable for injuries to persons and property. . . .' In *Arellano* v. *City of Burbank*, 13 Cal.2d 248 [89 P.2d 113], it was expressly held that 'injuries to persons' referred to in the statute, include such injuries as may be caused to persons by reason of the death of others. Further it is pointed out by respondents, in such cases as *Douglass* v. *City of Los Angeles*, 5 Cal.2d 123 [53 P.2d 353], and *Spencer* v. *City of Calipatria*, 9 Cal.App.2d 267 [49 P.2d 320], it was held that a recovery could not be had under the provisions of section 53051 of the Government Code unless a claim is filed as required by section 53052 of the same code, which lat-

"[1]Act of 1923 (Stats. 1923, p. 675), making cities and other public agencies liable for negligence in certain instances. Now substantially incorporated in section 53051, Government Code.

"Act of 1919 (Stats. 1919, p. 756), relating to liability of officers of cities and other public agencies. Now incorporated in section 1953, Government Code.

"Act of 1931 (Stats. 1931, p. 2475), requiring filing of claims with clerk of the legislative body of a city or public agency. Now section 53052, Government Code."

ter section provides (as does section 1981), 'Whenever it is claimed that a person has been injured . . . a . . . claim for damages shall be . . . filed. . . .' However, no case has been found in which it has been squarely held that a claim must be filed under section 53052 in a death action arising under section 53051. Respondents urge that since these pertinent statutes (Gov. Code, §§ 1981, 1953, 53051 and 53052) were reenacted as part of the Government Code after the decision in *Arellano* v. *City of Burbank, supra,* it must be presumed that the Legislature intended them to apply to death cases.

"The cases of *Dillard* v. *County of Kern,* 23 Cal.2d 271 [144 P.2d 365, 150 A.L.R. 1048], and *Shannon* v. *Fleishhacker,* 116 Cal.App. 258 [2 P.2d 835], are of no particular assistance in the solution of the question here presented. The former case involved section 4075 of the Political Code, which required that 'all claims' against a county should be presented as therein provided, while in the latter case the court was concerned with whether the plaintiff had proved the elements of liability required under the statute then in force (Stats. 1919, p. 756; 2 Deering's Gen. Laws, Act 5618). The same is true with reference to cases involving wrongful death actions against the city of Los Angeles (*Beeson* v. *City of Los Angeles,* 115 Cal.App. 122 [300 P. 993]; *Huey* v. *City of Los Angeles,* 137 Cal.App. 48 [29 P.2d 918]), as these cases involved a charter provision that 'No suit shall be brought on *any* claim . . . until a demand for the same has been presented. . . .'

"Thus, while a statute imposing liability for 'injuries to persons' has been construed to include liability for wrongful death (*Arellano* v. *City of Burbank, supra,* and cases cited), and while it has been sometimes assumed that a statute requiring the filing of a claim as a prerequisite to suit includes a suit for wrongful death, in no case has it been held that the provisions of section 1981, requiring the filing of a claim 'whenever it is claimed that *any person has been injured* . . . within 90 days after the accident has occurred' apply to a wrongful death situation. Nor does it necessarily follow that because the phrase 'injuries to persons' as used in a statute imposing liability has been construed to include wrongful death, the language of section 1981 should be construed to require the filing of a claim as a prerequisite to the maintenance of an action for wrongful death.

"It is manifest from the plain wording of section 1981

that it was the intention of the Legislature to qualify the common law right of action against the negligent person by requiring the filing of a verified claim only in the event the *injured person* claims that he has been injured as a result of the negligence of a public employee occurring during the course of the latter's public employment. Had it been the intention of the Legislature to extend the provisions of this section to another, new and different cause of action which comes into existence at the time of death of the injured person, appropriate language could, and no doubt would, have been used. Courts should not, under the guise of judicial interpretation, attempt to add to or detract from the legislative intent as expressed in the words of a statute. This is especially true when, as the Supreme Court said in the recent case of *Stewart* v. *McCollister,* 37 Cal.2d 203, 207 [231 P.2d 48], 'The several claims statutes and charter provisions prescribing varying requirements concerning the length of time for the filing of verified claims, the contents thereof, and the manner of filing or presentation may well be said to have become traps for the unwary. No additional trap should be added by an unwarranted construction of said section 1981.' We are unwilling to give our imprimatur to a strained construction of the section by applying it to a cause of action which, from a reading of the section's terms, is not included within its purview.

"In view of the foregoing conclusion at which we have arrived, we deem it unnecessary to discuss or decide other points made and issues raised upon this appeal.

"The judgment is reversed and the cause remanded with directions to the court below to overrule the demurrer and try the cause upon the merits."

For the reasons above stated I would reverse the judgment.

EDMONDS, J.—I am in agreement with the conclusions of the District Court of Appeal that a cause of action for wrongful death does not come within the purview of the claim statute and the judgment should be reversed. The reasoning of that court made unnecessary discussion of other questions presented by the parties. However, the contrary conclusion now reached upon the applicability of the statute to a cause of action for wrongful death requires consideration of the contention that the statute also is inapplicable to a cause of action based upon wanton and reckless misconduct. The question should not be evaded upon the ground

that the complaint states a cause of action for negligence alone and could not be amended to state one for wanton and reckless misconduct.

As I read the complaint, the opinion does not accurately summarize the plaintiffs' allegations. According to the pleading, it was extremely dangerous for a painter to work on the towers in the vicinity of ''hot wires'' and certain specialized safety precautions were required. None of these precautions was observed. The electrical mechanic assigned to the job ''insisted on certain necessary precautions . . . which if taken would somewhat slow down the painting job and increase its costs.'' O'Connor, the complaint continues, ''for the purpose of being able to proceed with said job with such expedition and cost as he desired, caused the removal of said Electrical Mechanic from the job, and thereafter, in willful, negligent and reckless disregard of the lives and limbs of members of said crew, adopted the practice of working and did cause his painting crew to work in dangerous proximity to said high tension wires, without the aforesaid protection of competent Electrical Mechanics, to the knowledge and with the consent and authority and pursuant to the directions'' of the other defendants.

The allegations of the complaint are sufficient to state a cause of action for wanton and reckless misconduct. ''A tort having some of the characteristics of both negligence and willfulness occurs when a person with no intent to cause harm intentionally performs an act so unreasonable and dangerous that he knows, or should know, it is highly probable that harm will result. (Rest. Torts, § 500 et seq.; Prosser, Torts, pp. 260, 261.) Such a tort has been labeled 'willful negligence,' 'wanton and willful negligence,' 'wanton and willful misconduct,' and even 'gross negligence.' It is most accurately designated as wanton and reckless misconduct. It involves no intention, as does willful misconduct, to do harm, and it differs from negligence in that it does involve an intention to perform an act that the actor knows, or should know, will very probably cause harm. (Citations.) Wanton and reckless misconduct is more closely akin to willful misconduct than to negligence, and it has most of the legal consequences of willful misconduct. Thus, it justifies an award of punitive damages, and contributory negligence by the plaintiff is not a defense.'' (*Donnelly* v. *Southern Pac. Co.*, 18 Cal.2d 863, 869-870 [118 P.2d 465].)

As examples of conduct which is in reckless disregard of

the safety of another, the Donnelly case cites *New York Central R. R. Co.* v. *Mohney,* 252 U. S. 152 [40 S.Ct. 287, 64 L.Ed. 502], involving a collision between railroad trains after the engineer of one had run his train past two separate danger signals. Another example given is the operation of a bus over a dangerous railroad crossing at a rate of 55 to 60 miles per hour. (*Virginia Beach Bus Line* v. *Campbell,* 73 F.2d 97.) "Such conduct constitutes more than negligence. It is a dangerous act performed intentionally with the knowledge that it will probably cause harm." (*Donnelly* v. *Southern Pac. Co., supra,* p. 870.)

In *Vega Aircraft* v. *Industrial Acc. Com.,* 27 Cal.2d 529, [165 P.2d 665], a finding of "serious and wilful misconduct of the employer" by the commission was upheld on evidence which showed a failure by supervisory employees to take the proper safety precautions in conducting experimental work of an extremely dangerous nature. The court said: "Serious and wilful misconduct is conduct which the employer knew, or should have known, was likely to result in serious injury or which evinced reckless disregard for the safety of the employe." (Pp. 533-534.)

"Serious and willful misconduct is conduct that the employer knew, or should have known, was likely to cause serious injury, or conduct that evinces a reckless disregard for the safety of others. (Citations.) It has been held repeatedly that the employment of workmen under dangerous conditions that can be guarded against constitutes a reckless disregard for their safety. (Citations.) The test under these cases is whether the employer knowingly or willfully committed an act that he knew or should have known was likely to cause harm to his employee." (*Parkhurst* v. *Industrial Acc. Com.,* 20 Cal.2d 826, 829-830 [129 P.2d 113]; *Hatheway* v. *Industrial Acc. Com.,* 13 Cal.2d 377, 381 [90 P.2d 68].)

The complaint in this case alleges all of the elements necessary to constitute the tort of "wanton and reckless misconduct," as it is called in the Donnelly case, *supra,* or of "wilful misconduct," the designation more generally applied to it in the decisions and statutes. (Rest., Torts, § 500, special note.) Here the defendants, it is alleged, knew the danger and deliberately failed to provide, or even removed, the proper safety procedures. This is far more than a simple allegation of negligence although negligence may be included within the scope of the pleading. If the facts alleged are proved, a judg-

ment based upon wanton and reckless misconduct would be warranted. The situation is not one where the plaintiffs attempt to evade the claim statute by formally alleging that negligent acts also were "wilful." They allege all of the facts necessary to support a finding of wilful misconduct. This belies the implication of the majority opinion that the allegation of wilfullness was mere formalism.

Even if it may correctly be concluded that the complaint states a cause of action for negligence only, it is obvious from the facts alleged that the plaintiffs could state a cause of action for wanton and reckless misconduct. "Unless it is clear that a complaint does not state a cause of action and cannot be so amended as to obviate the objections thereto it is error to refuse permission to amend." (*Hillman* v. *Hillman Land Co.,* 81 Cal.App.2d 174, 181 [183 P.2d 730] ; *People* v. *Turlock Home Tel. & Tel. Co.,* 200 Cal. 546, 550 [253 P. 1108] ; *Payne* v. *Baehr,* 153 Cal. 441, 447-448 [95 P. 895] ; *Photochart* v. *Del Riccio,* 94 Cal.App.2d 315, 319 [210 P.2d 547].) Under the circumstances, the general demurrer should not have been sustained without leave to amend.

By basing the judgment upon the conclusion that the complaint states a cause of action for negligence only, the majority implicitly concede that wilful misconduct is not included within the provisions of section 1981 of the Government Code. No other interpretation of the statute is possible. By its express terms, it applies only to "negligence or carelessness." "Wilful misconduct" is not included.

Statutes in derogation of the common law will be strictly construed. (*McCann* v. *Hoffman,* 9 Cal.2d 279, 282 [70 P.2d 909] ; *Callet* v. *Alioto,* 210 Cal. 65, 70 [290 P. 438].) At common law, the public employee was liable for his tortious act. (*Perkins* v. *Blauth,* 163 Cal. 782, 789 [127 P. 50] ; *Doeg* v. *Cook,* 126 Cal. 213, 216-217 [58 P. 707, 77 Am.St.Rep. 171] ; *cf. Elliott* v. *County of Los Angeles,* 183 Cal. 472, 474 [191 P. 899] ; *Moore* v. *Burton,* 75 Cal.App. 395, 401 [242 P. 902].) Government Code, section 1981, places a procedural requirement upon the maintenance of the previously existing cause of action. (*Veriddo* v. *Renaud,* 35 Cal.2d 263, 266 [217 P.2d 647] ; *Huffaker* v. *Decker,* 77 Cal.App.2d 383, 389 [175 P.2d 254].) This limitation upon the common law cause of action should be strictly construed and not extended to causes of action other than those specifically encompassed within the terms of the statute.

This court consistently has followed the general rule that "wilful misconduct" is much more than "negligence." It is the intentional doing of an act, rather than failure to perform a duty. The distinction is basic, not merely technical. The two types of conduct are essentially different. "Wilful misconduct" is not "negligence." As recently as *Benton* v. *Sloss,* 38 Cal.2d 399, 403 [240 P.2d 575], the court, interpreting Vehicle Code sections 402 and 403, distinguished between "negligence" and "wilful misconduct," holding that the latter is not included within the former.

The Benton case relies upon *Weber* v. *Pinyan,* 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407], which reviews at length the cases distinguishing the two separate types of conduct. There, the court was faced with the question whether "wilful misconduct" in section 141¾ of the Vehicle Act (now Veh. Code, § 403) is the same as "negligence" in section 1714¼ of the Civil Code (now Veh. Code, § 402). It held that the two types of conduct were different. In reaching its conclusion, it relied upon cases drawing the distinction in the general field of tort law as well as upon decisions construing the motor vehicle statutes. To emphasize its point that the Legislature understood the difference, it mentioned in passing the use of both "negligence" and "wilful misconduct" in Vehicle Code, section 352, relating to liability for the acts of a minor.

Civil Code, section 1714, draws the distinction between the two types of conduct by separately describing acts giving rise to liability. It provides: "Everyone is responsible; not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. . . ."

*Donnelly* v. *Southern Pac. Co., supra,* provides a graphic explanation of the difference between negligence and wilful misconduct and of the varying degrees of negligence. The question involved was whether certain actions constituted wilful misconduct, the only basis upon which liability could be predicated, or whether they were merely negligence, even though of a high degree. The court said: "Negligence is an unintentional tort, a failure to exercise the degree of care in a given situation that a reasonable man under similar circumstances would exercise to protect others from harm. (Citations.) A negligent person has no desire to cause the

harm that results from his carelessness (citation), and he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm. (Citation.) Willfulness and negligence are contradictory terms. (Citations.) If conduct is negligent, it is not willful; if it is willful, it is not negligence." (P. 869.) Otherwise stated, the conduct being considered, said the court, may have been "gross" under the California rule, but it constituted negligence and not wanton and reckless misconduct.

Prior to the adoption of chapter 1168, Statutes of 1931, upon which section 1981 is based, the distinction between "negligence" and "wilful misconduct" had been clearly drawn by the courts. In *Malone* v. *Clemow,* 111 Cal.App. 13 [295 P. 70], it was said: "We should not confuse 'gross negligence' with 'willful misconduct,' because there is a clear distinction between the two terms." (P. 17.) Reviewing the authorities, the court held that "whenever the element of *knowledge* and *wilfulness* enters into the act, *it ceases to be negligence,* and becomes at least 'willful misconduct,' and this is true no matter what degree of negligence is being considered." (P. 17.)

"When the scope and meaning of words or phrases in a statute have been repeatedly interpreted by the courts, there is some indication that the use of them in a subsequent statute in a similar setting carries with it a like. construction." (*Perry* v. *Jordan,* 34 Cal.2d 87, 93 [207 P.2d 47]; *City of Long Beach* v. *Payne,* 3 Cal.2d 184, 191 [44 P.2d 305].) The frequent definitions of "negligence" as distinguished from "wilful misconduct," and the application of the definition to liability "resulting from negligence" in section 1714¼ of the Civil Code (now Veh. Code, § 402,) indicate a legislative intent to give a similar construction to "as a result of the negligence" in section 1981.

Therefore, even if it may correctly be held that a cause of action for wrongful death is included within the terms of the statute, the demurrer was sustained improperly. The complaint is based upon a cause of action for wanton and reckless misconduct, for which no claim is required.

For this reason, as well as those stated by the District Court of Appeal, I would reverse the judgment.

Appellants' petition for a rehearing was denied November 20, 1952. Edmonds, J., and Carter, J., were of the opinion that the petition should be granted.